# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Jordan*, 2011 IL App (4th) 100629

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JENNA M. JORDAN, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-10-0629 |
| Filed | November 14, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly suppressed the inculpatory statements defendant made while she was questioned by the officer who had stopped the car in which defendant was a passenger on the suspicion that the driver was not wearing his seatbelt and the cannabis discovered as a result of the statements she provided, since defendant made the statements after being locked in a squad car for over 20 minutes, she never received *Miranda* warnings, she did not waive her rights, and the appearance of additional officers at the scene transformed what began as a routine investigation into a suspected seatbelt violation into a full-fledged drug search. |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, No. 09-CF-226; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Thomas J. Brown, State's Attorney, of Pontiac (Patrick Delfino, Robert J. Biderman and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Michael J. Pelletier, Karen Munoz, and Molly A. Corrigan, all of State Appellate Defender's Office, of Springfield, for appellee.

Panel

JUSTICE COOK delivered the judgment of the court, with opinion.
Justices Steigmann and Pope concurred in the judgment and opinion.

## OPINION

¶ 1    In April 2010, the trial court granted defendant Jenna M. Jordan's motion to suppress evidence in her prosecution for possession of cannabis with the intent to deliver. Specifically, the court suppressed admissions made by defendant and contraband seized during a traffic stop of a vehicle in which defendant was a passenger, finding the evidence was obtained in violation of defendant's fourth-amendment rights (see U.S. Const., amend. IV) and *Miranda v. Arizona*, 384 U.S. 436 (1966). The State brings this interlocutory appeal under Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2006), arguing the suppressed evidence was obtained through constitutional means. We disagree and affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The traffic stop in question occurred in August 2009. Livingston County sheriff's deputy David Netter stopped a Chevrolet Blazer driven by Mark Zaloudek on suspicion that the driver was not wearing his seatbelt. Defendant was Zaloudek's sole passenger. Deputy Netter approached the vehicle to identify the driver and passenger and inform them of the reason for the stop. During this initial exchange, Zaloudek informed Deputy Netter that he was on "parole," or what is currently known as mandatory supervised release (MSR).

¶ 4    Deputy Netter returned to his patrol car to run warrant checks on defendant and Zaloudek. He confirmed that Zaloudek was on MSR and determined that neither occupant had any outstanding warrants. Deputy Netter recognized Zaloudek by his name; he had been informed by another Livingston County sheriff's deputy, Deputy Chambers, that Zaloudek was among individuals suspected of drug activity in the Streator area. Before returning to Zaloudek's vehicle, Deputy Netter called Deputy Chambers regarding Zaloudek.

¶ 5    Deputy Netter next approached the Blazer from the passenger side and began talking with defendant. He asked her to accompany him back toward his patrol car, out of Zaloudek's earshot. At Deputy Netter's request, defendant sat in the rear seat of the squad car with the

door open while Deputy Netter questioned her. Deputy Netter asked defendant whether she was employed. He asked what she and Zaloudek had been doing and where they were headed when he pulled them over. He asked whether she smoked marijuana; she replied that she had, "a long time ago." When asked, defendant responded that no contraband was in Zaloudek's vehicle; after a pause, she added that, if contraband was in the vehicle, neither she nor Zaloudek knew about it. This questioning lasted approximately four minutes. Before he returned to the Blazer, Deputy Netter locked defendant in the backseat of the squad car; he lowered the rear window so defendant could call out to him if she needed anything.

¶ 6 Returning to the Blazer, Deputy Netter asked Zaloudek to exit the vehicle. He questioned Zaloudek along the same lines as he had questioned defendant. Notably, Zaloudek indicated he was unemployed, yet when Deputy Netter searched his person, $370 in $10 and $20 bills was found in Zaloudek's rear pocket. When asked how he obtained the cash, Zaloudek explained that he sometimes mowed yards for his brother.

¶ 7 Deputy Netter suspected Zaloudek's vehicle contained contraband based on Zaloudek's status as a parolee, the cash found on his person, defendant's and Zaloudek's suspiciousness, and the phone conversation Deputy Netter had with Deputy Chambers. Deputy Netter informed Zaloudek that his Blazer was subject to being searched pursuant to his MSR agreement. Deputy Netter nevertheless asked for and received Zaloudek's consent to the search. By this time, three reinforcement officers had arrived at the scene. One officer held Zaloudek near Deputy Netter's patrol car while Deputy Netter and the two other officers searched Zaloudek's vehicle. No contraband was found.

¶ 8 Following this search, Deputy Netter returned to his patrol car and resumed questioning defendant. Approximately 15 minutes had elapsed since he had left her alone there. He informed her that he intended to call the canine unit to search the Blazer further. Deputy Netter again asked defendant whether "there was anything illegal on her person or in the vehicle." After about eight minutes of questioning, defendant admitted she had cannabis concealed in her pants and in a bag in the vehicle. She produced the cannabis on her person, described the bag, and told Deputy Netter where the bag could be found in the Blazer. She claimed ownership of the bag. Officers found the bag as described by defendant. It contained two more bags of different sizes, each containing cannabis.

¶ 9 Defendant was arrested. The following day, the State charged her with possession of cannabis (30 to 500 grams) with intent to deliver. See 720 ILCS 550/5(d) (West 2008). In November 2009, defendant moved to suppress evidence, including the cannabis and defendant's admissions to Deputy Netter.

¶ 10 In March and April 2010, the trial court held a two-day hearing on defendant's motion to suppress. Deputy Netter was the sole witness; he testified to the relevant events as described above. The audio-video recording taken by Deputy Netter's dashboard camera was admitted as evidence for defendant and was played for the court. Zaloudek's MSR agreement was admitted as evidence for the State. Following arguments, the court concluded defendant had been unlawfully detained when she made the incriminating statements as she was held in the backseat of the squad car for an unreasonable duration. The court also noted defendant was not advised of her constitutional rights in accordance with *Miranda* before she made her

inculpatory statements. As it concluded they resulted from this unconstitutional seizure and questioning of defendant, the court suppressed defendant's admissions and the seized cannabis.

¶ 11    In July 2010, the trial court denied the State's motion to reconsider. In August, the State filed its notice of appeal and certificate of impairment, effecting this appeal.

¶ 12                                II. ANALYSIS

¶ 13    On appeal, the State contends defendant's seizure for the duration of the traffic stop and the questioning that resulted in defendant's inculpatory statements were constitutional. We conclude the trial court did not err as the discovery of the suppressed evidence resulted from a *Miranda* violation.

¶ 14    We review a trial court's disposition of a motion to suppress under a bifurcated standard. *People v. Oliver*, 236 Ill. 2d 448, 454, 925 N.E.2d 1107, 1110 (2010). "The trial court's factual findings are entitled to great deference, and we will reverse them only if they are against the manifest weight of the evidence." *Id.* "The trial court's ultimate legal ruling on whether suppression is warranted, however, is reviewed *de novo*." *Id. De novo* review is also appropriate "where the facts and witness credibility are not in dispute." *People v. Roberts*, 374 Ill. App. 3d 490, 495, 872 N.E.2d 382, 387 (2007).

¶ 15    For purposes of our analysis, we may assume that the traffic stop was valid at its inception (see *Terry v. Ohio*, 392 U.S. 1, 20 (1968) (holding an investigatory detention is constitutional only if justified at its inception and reasonably related in scope to the circumstances justifying the interference with detainee's freedom from unreasonable seizures)) and that the first search of Zaloudek's vehicle was allowable under his MSR agreement (see *People v. Wilson*, 228 Ill. 2d 35, 48-50, 885 N.E.2d 1033, 1041-42 (2008) (holding a suspicionless search of a parolee's residence was constitutional in light of the search condition in the parolee's MSR agreement)). Further, as we decide this case on *Miranda* grounds, we need neither discuss nor decide whether, under the fourth amendment, the suppressed evidence was obtained as a result of an unlawful detention. *Cf. People v. Chestnut*, 398 Ill. App. 3d 1043, 1054, 921 N.E.2d 811, 822 (2010) (holding the defendant's unlawful detention tainted evidence subsequently discovered as a result of the detention, warranting suppression).

¶ 16    Under *Miranda*, 384 U.S. at 444, a defendant's statements stemming from "custodial interrogation" of the defendant are inadmissible unless preceded by the defendant's knowing and intelligent waiver of his right not to be compelled to testify against or incriminate himself and his right to have an attorney present during such interrogation. Accordingly, an officer who intends to subject a person to custodial interrogation toward obtaining an admissible confession must first warn that individual "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed," and obtain his waiver of those rights before questioning him. *Id.* In addition to any statements obtained in violation of *Miranda*, any evidence seized upon information obtained as the result of an unconstitutional interrogation is likewise inadmissible as "fruit of the poisonous tree." See *Wong Sun v.*

-4-

*United States*, 371 U.S. 471, 487-88 (1963) (holding that the exclusion of unconstitutionally obtained evidence extends to evidence that is "come at by the exploitation of that illegality" (internal quotation marks omitted)).

¶ 17    "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Interrogation is custodial if, under the circumstances of the questioning, "a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *People v. Braggs*, 209 Ill. 2d 492, 506, 810 N.E.2d 472, 481 (2005); see also *id.*, 810 N.E.2d at 482 (clarifying "the accepted test is what a reasonable person, *innocent of any crime*, would have thought had he or she been in the defendant's shoes" (emphasis added)). These warnings are required for admissibility if and only if the person being questioned is in custody. See *People v. Slater*, 228 Ill. 2d 137, 149, 886 N.E.2d 986, 994 (2008) ("The finding of custody is essential, as the preinterrogation warnings required by *Miranda* are intended to assure that any inculpatory statement made by a defendant is not simply the product of the compulsion inherent in custodial surroundings." (Internal quotation marks omitted.)).

¶ 18    Relevant factors to consider when determining whether an interrogation was custodial include "(1) the time and place of the confrontation; (2) the number of police officers present; (3) the presence or absence of family or friends; (4) any indicia of a formal arrest procedure, such as physical restraint, the show of weapons or force, booking or fingerprinting; and (5) the manner by which the individual arrived at the place of the interrogation." *People v. Melock*, 149 Ill. 2d 423, 440, 599 N.E.2d 941, 948 (1992). Further considerations include "the location, length, mood and mode of the interrogation; *** the intentions of the officers; and the extent of knowledge of the officers and the focus of their investigation." *People v. Brown*, 136 Ill. 2d 116, 124-25, 554 N.E.2d 216, 220 (1990). *Cf. People v. Gorman*, 207 Ill. App. 3d 461, 473, 565 N.E.2d 1349, 1356-57 (1991) (clarifying the officers' intent, knowledge, and focus of investigation are relevant in the "limited[ ] context" of (1) determining whether the officers' verbal and nonverbal conduct created a coercive atmosphere and (2) resolving conflicts between the defendant's version of the facts and the State's).

¶ 19    Here, the parties agree that defendant was not given *Miranda* warnings until after she confessed to possessing cannabis, relinquished the cannabis hidden on her person, and led officers to the cannabis concealed in Zaloudek's vehicle. Further, defendant clearly made the suppressed statements in response to "questioning initiated by law enforcement officers"; thus, defendant was subjected to interrogation. On these facts, if defendant's statements were made while she was in custody, then the trial court's suppression order was not erroneous.

¶ 20    The question whether defendant was in custody is not settled simply by the fact that she was not free to leave when Deputy Netter questioned her. The Supreme Court has refused to adopt a bright-line rule whereby a detainee during a traffic stop either must be given *Miranda* warnings at the outset of questioning or need not be given the warnings until formally arrested. *Berkemer v. McCarty*, 468 U.S. 420, 441 (1984). Generally, due to the "noncoercive aspect of ordinary traffic stops," a person temporarily detained during a traffic stop is not in custody. *Id.* at 440. However, if such a person "thereafter is subjected to

treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Id.*

¶ 21    Here, defendant was in custody during questioning and was, accordingly, entitled to *Miranda* warnings. Defendant was detained and isolated from Zaloudek for some 27 minutes before she confessed to possessing cannabis. Defendant's isolation ensured that Zaloudek would be unavailable to testify as an occurrence witness on defendant's behalf and *vice versa*. Moreover, it allowed that defendant and Zaloudek could be played against each other as each was removed from the other's range of observation and questioning was alternated between them; neither could know what possibly incriminating information the other was disclosing. Even an innocent person in defendant's position, not privy to her ally's disclosures, could have been unnerved by the possibility of facing untrue allegations, levied by a self-interested friend under the pressure of savvy interrogation practices. *Miranda* was decided in recognition of the skilled interrogator's ability to compel a person to relinquish his fifth-amendment rights. *Miranda*, 384 U.S. at 457-58 ("It is obvious that such an interrogation environment is created for no purpose other than to subjugate the individual to the will of his examiner. *** Unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice."). By defendant's isolation from Zaloudek, Deputy Netter enjoyed an advantage in interrogating defendant that may have interfered with the free exercise of her constitutional rights.

¶ 22    Further, defendant was locked in a squad car for about 23 minutes. By indicating he intended to send for drug-detecting dogs, Deputy Netter threatened to extend this detention indefinitely; defendant could have reasonably concluded that her initial insistence of innocence was not satisfactory and she would not be allowed to leave until she confessed to suspected wrongdoing. See *id.* at 468 ("It is not just the subnormal or woefully ignorant who succumb to an interrogator's imprecations, whether implied or expressly stated, *that the interrogation will continue until a confession is obtained* or that silence in the face of accusation is itself damning and will bode ill when presented to a jury." (Emphasis added.)).

¶ 23    The object of the police investigation in this case was clearly to catch defendant and Zaloudek in a crime in progress, despite the officers' starting with little actual evidence of wrongdoing. Although defendant was told she was not in any trouble, this assertion was contradicted by Deputy Netter's asking questions designed to elicit incriminating responses, locking defendant in the squad car, and conducting a full search of Zaloudek's vehicle, including, defendant was told, an anticipated drug sniff. Defendant's detention in the backseat of the locked squad car–where arrested individuals are detained–and the presence of twice as many law-enforcement officers as detainees at the scene created a "police-dominated atmosphere" suggesting custody and reinforced to defendant that she was targeted by the investigation. *Id.* at 445. *Cf. People v. Croom*, 379 Ill. App. 3d 341, 351-52, 883 N.E.2d 681, 689-90 (2008) (noting, toward finding the defendant was not in custody, that the police van in which the defendant was questioned was unmarked, had no radio and no cage, and remained unlocked except when moving).

¶ 24    By the time defendant confessed, defendant's detention could no longer be fairly characterized as an "ordinary" traffic stop, during which noncoercive, conversational

questioning of the driver and passenger may be said not to be custodial. *Berkemer*, 468 U.S. at 439. Instead, what began as an investigation into a suspected seatbelt violation had been transformed into a full-fledged drug search.

¶ 25 Finally, we find it troubling that the audio portion of the recording of the interrogation during which defendant implicated herself is conspicuously absent. The recording indicates Deputy Netter's microphone was shut off for the approximately eight minutes beginning when he returned to his squad car to question defendant for the second time and ending after her confession was obtained. Even allowing for the possibility of inadvertence, the incompleteness of the recording needlessly encumbers the analysis of whether defendant was questioned in a custodial atmosphere and raises doubts as to the purpose and value of such recordings. Clearly, more was said during the questioning than Deputy Netter testified to at the suppression hearing. The full contents of the interview may have rendered it more obviously unconstitutional.

¶ 26 Defendant was questioned while in custody without receiving *Miranda* warnings and waiving her right against self-incrimination and her right to counsel. Accordingly, the trial court did not err in concluding that the evidence obtained as a result of the questioning is inadmissible.

¶ 27 III. CONCLUSION

¶ 28 For the foregoing reasons, we affirm the trial court's judgment.

¶ 29 Affirmed.