2016 IL App (3d) 130594

Opinion filed March 7, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2016

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-13-0594 Circuit No. 12-CF-389 |
| | ) | |
| EUGENE TAYBORN, | ) ) | The Honorable Edward Burmila, Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Wright concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.

**OPINION**

¶ 1 Following a jury trial, defendant, Eugene Tayborn, was found guilty of possession of cocaine. On appeal, defendant argues that he received ineffective assistance of counsel because his counsel failed to file a motion to suppress defendant's statement that he was transporting cocaine, which defendant made in response to police questioning without having received *Miranda* warnings. *Miranda v. Arizona*, 384 U.S 436 (1966). We agree that defendant's counsel provided ineffective assistance by failing to file a motion to suppress defendant's statement and reverse and remand for further proceedings.

¶ 2                                    FACTS

¶ 3          The State charged defendant by way of a two-count indictment. In count I, defendant

was charged with possession with intent to deliver 15-100 grams of cocaine (720 ILCS

570/401(a)(2)(A) (West 2012)). In count II, defendant was charged with possession of cocaine

(720 ILCS 570/402(c) (West 2012)). The case proceeded to a jury trial.

¶ 4          At trial, the evidence for the State established that at 8:40 p.m., on February 16, 2012,

Deputy Michael Weder and Officer Dustin Legner performed a traffic stop of a vehicle because

it did not have a registration plate light. Weder approached the female driver and Legner

approached the male passenger. According to Weder, the female driver seemed nervous. Weder

asked the driver for her license and the vehicle's registration. The driver slowly produced the

paperwork. The driver kept trying to cover a purse located on the center console with her right

hand and refused to move her hands when Weder asked her to place her hands where he could

see them. Weder described the driver acting funny about the purse and making furtive

movements toward the purse. She also placed papers over the purse. Weder asked the driver to

step out of the vehicle. Weder spoke to the driver and then handcuffed her and placed her into

his squad car.

¶ 5          Legner conducted an inventory search of the vehicle incident to the driver's arrest.

During the inventory search, the defendant, who had been the passenger, was removed from the

vehicle and placed in handcuffs for safety reasons. Legner testified that defendant was being

detained but was not under arrest during the search. In searching the vehicle, Legner observed a

white sock, in plain view, in the purse. Legner opened the sock and discovered a clear baggie

with a white rock powder substance that Legner suspected was cocaine. Legner placed the

baggie on the hood of the squad car, and Weder took possession of it. As Legner continued the

vehicle search, three additional officers arrived in two or three additional squad cars. Legner heard defendant tell Deputy Matthew McKee that he was transporting the cocaine from Chicago to someone in Iowa.

¶ 6     McKee testified that he was called to the scene of the traffic stop. When McKee arrived on scene he parked behind Weder's vehicle and saw Legner speaking with defendant. As McKee walked toward Legner, he heard Legner ask defendant to get out of the vehicle so that Legner could conduct an inventory search of the vehicle. McKee walked defendant toward the shoulder of the highway. McKee and defendant began casually conversing. McKee testified that defendant was not in handcuffs. McKee heard Legner indicate to Weder that he discovered what he suspected was cocaine in the vehicle. McKee asked defendant about the cocaine. Specifically, McKee testified as follows:

"[Officer McKee]:     I overheard Officer Legner tell Deputy Weder he found suspect cocaine in the vehicle.

BY [PROSECUTOR]:

Q.     Did you then ask the defendant about that?

A.     Yes, I did.

Q.     What was his response?

A.     He admitted that he had gotten it from an acquaintance in Chicago and he was bringing it to Iowa.

Q.     Did he say who he was bringing it to Iowa to [*sic*]?

A.     No, he did not.

Q.     At that point what did you do?

A.     I took [defendant] into custody, placed him in my vehicle."

3

Thus, in response to McKee's question, defendant had indicated that he received the cocaine from an acquaintance in Chicago and was bringing it to somebody in Iowa. At that point, Mckee took defendant into custody and placed defendant into his vehicle.[1] The cocaine-like substance was subsequently tested and determined to be 58.89 grams of cocaine. At the close of the State's case, the trial court denied defendant's motion for a directed verdict.

¶ 7       The jury found the defendant guilty on count II—possession of cocaine—and could not reach a verdict on count I for possession with intent to deliver 15-100 grams of cocaine. A mistrial was declared on count I, which proceeded to a bench trial, with the parties stipulating to the evidence that had been presented at the jury trial. The trial court found that defendant was in constructive possession of the cocaine because he was aware of the cocaine in the vehicle and admitted that he was going to deliver the cocaine. However, the trial court found that although defendant knew there was cocaine in the vehicle, there was insufficient evidence to indicate that defendant was aware of the amount of cocaine. The trial court noted that "the police officer, after the defendant was arrested" placed the cocaine on the hood of the car, exposing the amount of cocaine to defendant but defendant's knowledge of the amount of the cocaine at that point could not be considered because defendant had already been arrested. Because the State failed to prove that defendant knew of the amount of cocaine beyond a reasonable doubt, the trial court acquitted defendant on count I—possession with intent to deliver 15-100 grams of cocaine.

¶ 8       On July 29, 2013, the trial court sentenced defendant to 30 months in prison on Count II. On August 14, 2013, defense counsel orally motioned the trial court to reconsider defendant's

_____

[1] On cross-examination, McKee indicated that Weder made the arrest of defendant, and McKee transported defendant to jail.

4

sentence, which the trial court denied. Also, on August 14, 2013, defendant was released from prison, having served his 30-month prison sentence. Defendant appeals his conviction.

¶ 9                                                    ANALYSIS

¶ 10       On appeal, defendant argues that he received ineffective assistance of counsel because his counsel failed to file a motion to suppress his incriminating admission that he made in response to police questioning without defendant having first received *Miranda* warnings. See *People v. Hunt*, 2012 IL 111089, ¶ 25; *Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (holding that the prosecution may not use statements from a custodial interrogation unless procedural safeguards that secure the defendant's privilege against self-incrimination are demonstrated, which require that a defendant be warned of his right to remain silent, any statement made may be used as evidence against him, and of his right to an attorney). The State argues that the record is insufficient to determine whether defendant had received ineffective assistance of counsel because defendant failed to raise the issue in the trial court. Alternatively, the State argues that defendant did not receive ineffective assistance of counsel because he was not prejudiced by his counsel's failure to file a motion to suppress where the motion would not have been successful. The State claims that the motion would not have been granted because defendant was not subject to a custodial interrogation at the time he made the admission that he was transporting cocaine.

¶ 11              I. Direct Appeal of Ineffective Assistance of Counsel Claim

¶ 12       Initially, we address the State's claim that a direct appeal is not the proper forum for defendant's ineffective assistance of counsel claim because the trial record is inadequate for the purpose of analyzing counsel's performance. See *People v. Durgan*, 346 Ill. App. 3d 1121 (2004) (only the trial record is available on direct appeal and the trial record is often inadequate or incomplete for the purpose of analyzing counsel's performance). The State argues that the

5

issue of whether counsel was ineffective for failing to file a motion to suppress was not raised in the trial court so that "the record does not contain a thorough discussion on its merits." According to the State, a collateral review of defendant's claim of ineffective assistance of counsel is the more appropriate forum to address defendant's claim.

¶ 13    We disagree that this direct appeal is not an appropriate forum for defendant's claim of ineffective assistance of counsel in this case.  First, we note that collateral relief of a postconviction petition is not available to the defendant in this case because defendant has completed his sentence and term of mandatory supervised release.  See 725 ILCS 5/122-1 *et seq.* (West 2014) (Post-Conviction Hearing Act is available to "[a]ny person imprisoned in the penitentiary"); *People v. Carrera*, 239 Ill. 2d 241, 257 (2010)  (a postconviction remedy is available to those being deprived of their liberty, and not to those who have served their sentences and might wish to purge their records of past convictions); *People v. Martin-Trigona,* 111 Ill. 2d 295, 299 (1986) (a defendant who completed his sentence may not use the Post-Conviction Hearing Act simply to purge his criminal record).  Second, a meritorious ineffective assistance of counsel claim is a substantial impairment of a fundamental right that can be addressed by a reviewing court, even if the defendant failed to raise the issue in the trial court. See *People v. McCarter*, 2011 IL App (1st) 092864, ¶ 37 (claims of ineffective assistance of counsel and plain error review are overlapping because the second prong of the plain error rule that the error affects the fairness of trial is triggered if defendant proves he received ineffective assistance of counsel).  Consequently, in this case, this direct appeal is an appropriate forum to address the issue of whether he received ineffective assistance of counsel in the trial court.

¶ 14                                    II. Ineffective Assistance of Counsel

¶ 15      We now turn to the merits of the issue on appeal—whether defendant received ineffective assistance of counsel where his counsel failed to file a motion to suppress an incriminating statement that he made to police.  Defendant claims that a motion to suppress his statement would have been successful because he made the statement in response to a custodial interrogation without receiving *Miranda* warnings and the State had relied almost entirely on the statement to support his conviction.  The State argues that defendant's statement was not made in response to an interrogation that warranted *Miranda* warnings.

¶ 16      Every defendant has a constitutional right to the effective assistance of counsel.  U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8.  To establish ineffective assistance of counsel, defendant must show both:  (1) his counsel's representation fell below an objective standard of reasonableness; and (2) that the substandard representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese,* 104 Ill. 2d 504, 526-27 (1984) (adopting *Strickland* ).   Whether a defendant received ineffective assistance of counsel is evaluated with the reviewing court giving deference to the trial court's findings of fact and making a *de novo* assessment of the legal issue of ineffective assistance counsel.  *People v. Bailey*, 375 Ill. App. 3d 1055, 1059 (2007).

¶ 17      An attorney's decision whether to file a motion to suppress is generally a matter of trial strategy that is entitled to great deference.  *People v. White*, 221 Ill. 2d 1, 21 (2006).  To establish defendant's prejudice resulting from counsel's failure to file a motion to suppress evidence, a defendant must show that: (1) the unargued suppression motion is meritorious (*i.e.*, would have succeeded); and (2) there is a reasonable probability that the outcome of the trial would have been different had the evidence been suppressed.  *People v. Henderson*, 2013 IL 114040, ¶¶ 12, 15.

¶ 18     Statements obtained from a person as a result of custodial interrogation are subject to suppression if the person did not receive *Miranda* warning*s*. *Miranda*, 384 U.S. 436; *People v. Rivera*, 304 Ill. App. 3d 124, 128 (1999). An interrogation is any practice that police should know is reasonably likely to evoke an incriminating response from a suspec*t*. *Rivera*, 304 Ill. App. 3d at 128. A custodial interrogation takes place when police initiate questioning of a person who has been taken into custody or deprived of his freedom of movement in any significant wa*y*. *Miranda*, 384 U.S. at 444; *People v. Jordan*, 2011 IL App (4th) 100629, ¶ 17.

¶ 19     In determining whether a person was "in custody" for *Miranda* purposes, a court examines the circumstances surrounding the interrogation to determine whether, given those circumstances, a reasonable person, innocent of any crime, would have felt that he was not at liberty to terminate the interrogation and leave. *People v. Braggs*, 209 Ill. 2d 492, 505-06 (2003) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). Factors relevant to determine whether police questioning was a custodial interrogation include: (1) the time and place; (2) number of police officers present; (3) presence or absence of family or friends; (4) indicia of a formal arrest; and (5) manner by which the individual arrived at the place of interrogation. *Jordan*, 2011 IL App (4th) 100629, ¶ 18.

¶ 20     Generally, a person who is temporarily detained pursuant to an ordinary traffic stop is not in police custody for *Miranda* purposes due to the "noncoercive aspect of ordinary traffic stops." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *People v. Briseno,* 343 Ill. App. 3d 953, 959 (2003) ("[a] traffic stop, although restraining the driver's freedom of action, does not sufficiently impair the driver's exercise of the privilege against self-incrimination so as to require that the driver be warned of his *Miranda* rights"). However, the safeguards prescribed by *Miranda* will become applicable during a traffic stop as soon as a suspect's freedom of action is curtailed to the

8

same degree as a formal arrest. *Berkemer*, 468 U.S. at 440; *People v. Wright*, 2011 IL App (4th) 100047, ¶ 33. The temporary detention of an ordinary traffic stop can evolve into a custodial situation, requiring *Miranda* warnings prior to the interrogation of a suspect. See, *e.g., Jordan*, 2011 IL App (4th) 100629 (a traffic stop for driver's failure to wear a seat belt transformed into a drug search and custodial interrogation of the passenger where she was locked in a squad car, isolated from the driver, and told police intended to send for a drug-detection canine); *Rivera*, 304 Ill. App. 3d at 129 (the purpose of an on-the-scene investigatory stop ended when a bag of suspected cocaine was removed from defendant's vehicle and the officers' reasonable suspicion of criminal activity developed into probable cause of defendant's involvement in cocaine delivery).

¶ 21　　　　In this case, the failure of defendant's trial counsel to file a motion to suppress defendant's statement to police constituted deficient performance that prejudiced the defendant because the motion would have been granted and there is a reasonable probability that outcome of the trial would have been different had defendant's statement been suppressed. We can see no reasonable trial strategy for trial counsel's failure to file a motion to suppress defendant's statement to police that he was transporting cocaine where the statement was the State's strongest evidence against defendant. See *People v. Little*, 322 Ill. App. 3d 607, 613 (2001) (concluding counsel was ineffective for failing to file a motion to quash and suppress where a motion to quash and suppress would have been defense counsel's strongest, and most likely wisest, course of action).

¶ 22　　　　Here, during the search of the vehicle, the driver of the vehicle had already been arrested and placed in a squad car. Two or three squad cars were present and four to six officers were on the scene. Cocaine was found in the vehicle during the vehicle search and placed on the hood of the squad car. There was inconsistent testimony from the police officers as to whether defendant

9

was handcuffed while the vehicle was being searched and when he was questioned about the cocaine that had been discovered in the vehicle. Nonetheless, the fact-finder in this case—the trial judge—found that defendant was in custody at the time the cocaine was discovered. Even if defendant was not in custody prior to the discovery of the cocaine, the discovery of the cocaine in the vehicle would have transformed the detention of defendant into a custodial situation. See *Rivera*, 304 Ill. App. 3d at 129.

¶ 23        Therefore, when McKee asked defendant about the cocaine, the questioning was a custodial interrogation without defendant having first been given *Miranda* warnings so that his admission that he was transporting the cocaine to Iowa would have been inadmissible at trial. See *Jordan,* 2011 IL App (4th) 100629, ¶ 16 (a defendant's statement made during a "custodial interrogation" is inadmissible unless preceded by a knowing and intelligent waiver of defendant's right not be compelled to testify against himself and his right to have an attorney present) (quoting *Miranda,* 384 U.S. at 444). Consequently, we conclude that the performance of defendant's counsel fell below an objective standard of reasonableness where counsel failed to file a motion to suppress defendant's inadmissible statement that he was transporting cocaine. Defendant was prejudiced by his counsel's failure to file the motion to suppress because the motion would have been successful, as is demonstrated by the trial court's finding that defendant was in custody when the cocaine was discovered and at the time he was questioned. Without defendant's statement that he was transporting the cocaine, there is a reasonable probability that the outcome of the trial would have been different had defendant's admission been suppressed where the admission by defendant was the State's strongest evidence of defendant's constructive possession of the cocaine.

¶ 24    For the foregoing reasons, we find that defendant received ineffective assistance of counsel where his attorney failed to file a motion to suppress his admission that he was transporting cocaine, which defendant made in response to police questioning while he was in custody and without having received *Miranda* warnings. We reverse defendant's conviction for unlawful possession of cocaine and remand for further proceedings.

¶ 25                                          CONCLUSION

¶ 26    The judgment of the circuit court of Will County is reversed and this cause is remanded for further proceedings.

¶ 27    Reversed and remanded.

¶ 28    JUSTICE SCHMIDT, dissenting.

¶ 29    I respectfully dissent. I would affirm the trial court's ruling. Without a complete trial record, the proper venue to hear an ineffective assistance of counsel claim is a postconviction petition. *People v. Durgan*, 346 Ill. App. 3d 1121, 1142 (2004). Defendant's ineligibility to file a postconviction petition should not entitle him to a reversal of his conviction on the record.

¶ 30    A *Miranda* violation requires a finding of two elements: a defendant: (1) in custody; and (2) being interrogated. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Determining whether an interrogation is custodial involves analyzing a variety of factors. See *People v. Slater*, 228 Ill. 2d 137, 150 (2008); *supra* ¶ 19. We cannot find that a *Miranda* violation occurred without knowing what was actually said to the defendant. Accordingly, we cannot further rule that defense counsel's performance was deficient in forgoing a motion to suppress defendant's statement to Deputy McKee. Failure to file a motion to suppress is not, *per se*, ineffective assistance of counsel. See *People v. Bryant*, 128 Ill. 2d 448, 458-59 (1989).

¶ 31    On direct appeal, only the trial record is available for review and that record is often incomplete or inadequate for the purpose of analyzing trial counsel's performance. *People v. Durgan*, 346 Ill. App. 3d at 1142 (quoting *Massaro v. United States*, 538 U.S. 500, 504-05 (2003)). In effect, trial records frequently will not disclose the facts required to decide either prong of a *Strickland* analysis and these issues are appropriately addressed in postconviction petitions. *Id*. Such is the case here.

¶ 32    The *Miranda* violation now alleged by defendant was not argued at trial. The majority, however, without knowledge of what he said to defendant, declares Deputy McKee's conversation with defendant an interrogation. *Supra* ¶ 23. The majority merely assumes that defendant was interrogated because he offered an incriminating response to whatever was asked of him. There was no testimony one way or the other about *Miranda*. We cannot be sure that the warnings were not given.

¶ 33    Interrogation by law enforcement is not a necessary prerequisite to an incriminating response by a defendant. Police officers are not held liable for the unforeseeable results of their actions during a custodial interaction with a defendant. *People v. Parker*, 344 Ill. App. 3d 728, 732 (2003) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980)). " '[T]he definition of interrogation can extend only to words or acts on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.' " (Emphasis in original.) *Id*. (quoting *Innis*, 445 U.S. at 302). In order to rule that a question or statement is interrogating in nature, courts must therefore also know—at a minimum—the substance of the content that elicited an incriminating response. McKee's alleged interrogation could have been intended to incriminate the more obvious owner of the contraband, the owner of the purse. The point is, we do not know.

12

¶ 34　　　　　The majority relies upon *Jordan* for its holding. *Supra* ¶ 23. That reliance is misplaced. In *Jordan*, the court knew what the officer said to provoke the incriminating statements. The case was before the appellate court on the State's certificate of impairment; the trial court had suppressed defendant's statements and the State's evidence after a full evidentiary hearing on defendant's motion to suppress. *Jordan*, 2011 IL App (4th) 100629, ¶¶ 10-11. Based on the record before us, we cannot say defense counsel's ineffectiveness at trial meets the requirements of deficiency and prejudice under *Strickland*. *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Coleman*, 206 Ill. 2d 261, 284 (2002). Perhaps defense counsel knew that defendant's statement was not the result of police interrogation. Perhaps police gave *Miranda* warnings; perhaps not. We should not speculate.