2020 IL App (1st) 182045-U

No. 1-18-2045

FIFTH DIVISION
DECEMBER 11, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 13976 |
| | ) | |
| REGINALD STEVENS, | ) | Honorable |
| | ) | Mauricio Araujo, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Hoffman and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State proved beyond a reasonable doubt that defendant constructively possessed a handgun that was recovered from inside an open closet about five feet from where the defendant was lying in a bed. The record is insufficient to review defendant's claim that trial counsel provided ineffective assistance by failing to file a motion to suppress a statement the defendant made to the police.

¶ 2    Following a bench trial, the defendant Reginald Stevens was convicted of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2016)), two counts of unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2016)), and a violation of the Firearm

Owner's Identification (FOID) Card Act (430 ILCS 65/2(a)(1) (West 2016)). The trial court sentenced the defendant to respective concurrent terms of six, six, six, and two years in prison. On appeal, the defendant contends that the State failed to prove beyond a reasonable doubt that he constructively possessed the handgun at issue, which was found in an open closet in a bedroom where the defendant was lying in a bed. In the alternative, he contends that trial counsel was ineffective for failing to move to suppress the unwarned custodial statement that the defendant sometimes stayed at the apartment, which was made in response to an officer's direct question regarding whether he lived there. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4     The defendant's convictions arose from the execution of a search warrant at an apartment in Chicago on August 25, 2016. Following his arrest, the defendant was charged by indictment with one count of AHC (count I), four counts of UUWF (counts II through V), one count of violating the FOID Card Act (count VI), and one count of possession of a controlled substance (PCS) (count VII).

¶ 5     Prior to trial, defense counsel filed a motion to quash the search warrant, alleging that the police officer who drafted the complaint for the warrant had lied about the number of narcotics-related arrests he had made by exaggerating the number. The trial court found that defendant had not made a substantial showing that the officer knowingly and intentionally, or with reckless disregard for the truth, made a false statement that was necessary to the finding of probable cause so as to merit a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). As such, the trial court denied the motion to quash. The matter proceeded to a bench trial on August 14, 2017.

¶ 6    At trial, Chicago police officer Ivan Passamentt testified that on August 25, 2016, he was working as part of a tactical team executing a search warrant at an apartment on the 6200 block of South Marshfield Avenue in Chicago. The defendant, whom Passamentt identified in court, was the target of the warrant.  At about 5:50 p.m., on the day in question, Passamentt and an unspecified number of other members of his team announced their office and breached the front door of the apartment. The only person present in the three-bedroom apartment was the defendant, who was lying in a bed in the north bedroom. The defendant "was surrounded by officers and he was handcuffed." When Passamentt asked the defendant who he was and whether he lived at that address, defendant responded "that he lived there from time to time." After defendant was detained, he was relocated to the front steps of the building.

¶ 7    The police conducted a systematic search of the apartment and took pictures. During the search, Passamentt recovered a loaded semiautomatic .25-caliber handgun from the closet of the bedroom where the defendant had been lying in the bed. Passamentt denied that the handgun was "buried within the closet." Rather, it was on top of a laundry bin in the closet, about five feet from where the defendant had been lying. There were clothes under the handgun, but not on top of it. Officers also found drug paraphernalia in the same bedroom and live ammunition in the living room. Some of the ammunition was of the same caliber as the recovered handgun and some was of a different caliber. Officers also found "a couple of bags" of suspect heroin in another bedroom. After the handgun was recovered, Passamentt placed the defendant in custody.

¶ 8    Passamentt identified five photographs that were entered into evidence. The photographs depicted the "target location" of the warrant, the north bedroom, the handgun, a closer view of the handgun, and the ammunition recovered from the living room. On the photograph of the bedroom,

Passamentt marked an X on the spot where defendant was located when the officers entered the room and an O on the spot where the officers found the handgun.

¶ 9 On cross-examination, Passamentt acknowledged that in his grand jury testimony, he answered affirmatively when asked, "Was the defendant detained in the north bedroom where he was sleeping?" However, at trial, he stated that the defendant was not sleeping when the officers entered the bedroom. Rather, the defendant was lying in the bed, fully clothed. Passamentt denied waking the defendant up and stated, "He was already awoke [*sic*]." But Passamentt also agreed that the defendant "was sleeping when [he] first entered that room."

¶ 10 Passamentt gave the following answers in response to further cross-examination:

"Q. And as soon as you asked him his name, he responded with the name Reginald Stevens, was he then handcuffed and removed from the room?

A. Yes.

Q. Where was he taken?

A. He was relocated to the front steps of the residence.

Q. Now in the course at that point in time, did you ask the defendant if he lived there?

A. I did.

Q. And did he answer you, I stay there from time to time?

A. Correct.

Q. So he didn't say, I lived there from time to time?

A. That is correct, sir.

Q. Now once you removed him, where did you take him?

A. To the front steps of the location.

Q. The front steps?

A. Yes.

Q. In other words, you took him out of the building immediately?

A. Yes."

Passamentt agreed that once the defendant was taken downstairs, the officers began a systematic search of the apartment.

¶ 11    Passamentt acknowledged that the officers did not find any identification or documentation associating the defendant with the apartment, but did find documents with multiple names that were not the defendant's. When the officers entered the north bedroom, the defendant did not make any movement toward the handgun. The closet had a "bifold" door, which was open. There were both men's and women's clothing in the closet, as well as in both of the other bedrooms, which led Passamentt to the conclusion that the apartment had at least six occupants. Passamentt acknowledged that an evidence recovery log indicated the handgun had been found in a bedroom other than the one where the defendant had been lying in the bed. He stated that the document was inaccurate, possibly due to a clerical error by the officer who prepared it. The handgun was sent to the police laboratory for fingerprint examination, but Passamentt never received a report and therefore did not know whether the defendant's fingerprints were found on the handgun.

¶ 12    On redirect examination, Passamentt reiterated that he recovered the handgun from the bedroom where the defendant was located and that the defendant was "roughly" five feet from the handgun.

¶ 13    Chicago police officer Robert Cummings testified that he assisted in searching the apartment. During the search of the living room, he recovered a clear plastic bag containing 18 live .22-caliber rounds and a box containing 44 live .25-caliber rounds.

¶ 14    The parties stipulated that if called as a witness, Illinois State Police detective Bob Radmacher of the Firearm Services Bureau would testify that he conducted a database search for the defendant using his name and birth date. As of October 6, 2016, the defendant had not been issued a FOID card or a concealed carry license. The State introduced into evidence, by way of stipulation, certified copies of conviction reflecting that defendant had been convicted of PCS in 2010, UUWF in 2004, and possession with intent to deliver between 15 and 100 grams of cocaine in 1992.

¶ 15    The defendant did not testify or present evidence.

¶ 16    In closing argument, defense counsel argued that Passamentt was not credible, that the State had not proved constructive possession of the handgun, and that the State had not proved the defendant guilty beyond a reasonable doubt. In support of his arguments, counsel argued that the instant case was similar to *People v. Wright*, 2013 IL App (1st) 111803, where, as here, the defendant was in proximity to a weapon but made no movements to discard or conceal it.

¶ 17    The State argued that it had shown the defendant possessed the handgun. In doing so, the State emphasized that the handgun was found five feet away from where the defendant was lying in a bed, "sleeping or resting or what have you." In addition, the State asserted that the handgun was not buried inside the closet or the laundry basket, but rather, was on top of clothes, and that the defendant "admitted to officers that he stays at that residence." Finally, the State argued that

defense counsel's reliance on *Wright* was misplaced because that case was factually dissimilar and involved different charges.

¶ 18 The trial court found the defendant not guilty of the two counts of UUWF (counts IV and V) that were predicated on his possession of the ammunition in the bag and the box. The court also found the defendant not guilty of PCS (count VII). The trial court found the defendant guilty of AHC (count I), two counts of UUWF predicated on possession of the handgun and the ammunition within the handgun (counts II and III), and violating the FOID Card Act (count VI).

¶ 19 In the course of pronouncing its judgment, the trial court explained its finding that the defendant possessed the handgun:

"So we have [photograph] People's No. 2 that shows the bedroom itself. There is an X where the bed is, an O where the gun is recovered. The bifold doors are open. They were open at the time.

Looking by the placement of the chair in front of the—one of [the] bifold doors, it would appear it's been that way for a while at least.

People's 3 and 4 are [photographs of] the weapon itself. It's just laying on top of everything else. We have the testimony of the officers that they entered the apartment. When they entered, the defendant is found in the bedroom where the gun is located. The gun is not far away.

The defendant's own testimony, he stays there. He lives there from time to time. There are men and women's clothing in the bedroom. He's sleeping. According to the defense, he is sleeping. Actually, sleeping in the bed. State originally postulated that he was laying on the bed but defense states he is sleeping on the bed.

\*\*\*

So what do I have? I have the officer saying he is lying on the bed, sleeping on the bed and a few feet away from him is the handgun. There is clothing there with the defendant's admission that he stays there, lives there from time to time. Evidently, this is one of those times."

¶ 20    Defense counsel filed two posttrial motions which argued, *inter alia*, that the State failed to prove that the defendant constructively possessed the handgun. The trial court denied both motions. The court subsequently sentenced the defendant to three concurrent terms of six years in prison for AHC (count I) and UUWF (counts II and III), and a concurrent term of two years in prison for violating the FOID Card Act (count VI). The defendant filed a timely notice of appeal.

¶ 21                                        ANALYSIS

¶ 22    On appeal, the defendant first challenges the sufficiency of the evidence to sustain his convictions. Specifically, he contends that the State failed to prove beyond a reasonable doubt that he constructively possessed the handgun found in the bedroom closet.

¶ 23    When reviewing the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The credibility of the witnesses, the weight to be given their testimony, and the resolution of any conflicts in the evidence are within the province of the trier of fact, and a reviewing court will not substitute its judgment for that of the trier of fact on these matters. *People v. Brooks*, 187 Ill. 2d 91, 131 (1999). Reversal is justified only where the evidence

is "so unsatisfactory, improbable or implausible" that it raises a reasonable doubt as to the defendant's guilt. *People v. Slim*, 127 Ill. 2d 302, 307 (1989).

¶ 24    To sustain guilty findings for AHC, UUWF, and violating the FOID Card Act, as charged in this case, the State was required to prove, *inter alia*, that the defendant possessed the handgun at issue. See 720 ILCS 5/24-1.7(a) (West 2016); 720 ILCS 5/24-1.1(a) (West 2016); 430 ILCS 65/2(a)(1) (West 2016).

¶ 25    Possession of contraband may be actual or, as relevant here, constructive. *People v. Anderson*, 2018 IL App (4th) 160037, ¶ 31. To establish constructive possession of a weapon, the State must prove beyond a reasonable doubt that the defendant (1) knew the weapon was present and (2) exercised immediate and exclusive control over the area where the weapon was found. *Id.* ¶ 32. Evidence of constructive possession is often entirely circumstantial. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). "The trier of fact is entitled to rely on an inference of knowledge and possession sufficient to sustain a conviction absent other factors that might create a reasonable doubt as to the defendant's guilt." *Id.*

¶ 26    On appeal in this court, the defendant argues that the State did not establish that he had knowledge of the presence of the handgun, as it was on top of a laundry bin "tucked inside" the closet and the bin had clothes piled on it "which would have blocked the view of the gun from the bed." He asserts that his mere presence in the area where the handgun was found does not establish his knowledge of or control over the handgun. Noting that the handgun was not discovered until the officers conducted a systematic search of the room, he maintains that the gun was not readily visible from the entrance of the room or the bed where he was lying. Defendant asserts that the photographs admitted into evidence undercut the State's position that the handgun was visible

from the bed. He argues that the photograph of the bedroom "shows that between the head of the bed and the location of the gun, there are bins full of clothing and other items obstructing the view into the closet area from the bed"; that one of the photographs of the interior of the closet "shows that the bin the gun was sitting on was also full of clothes, and that those clothes were piled higher on the side of the bin closest to the bed"; and that both photographs of the interior of the closet show that "bins full of clothing and other items would have obstructed someone's view of the gun when lying on the bed." The defendant further argues that there was no evidence as to the length of time in which he was in the bedroom; that the police found no mail or documents with his name; that he made no movement toward the closet; and that no evidence linked him to the men's clothing in the closet.

¶ 27    Knowledge may be inferred from several factors including: (1) the visibility of the weapon from the defendant's location; (2) the amount of time the defendant had an opportunity to observe the weapon; and (3) gestures or movements made by the defendant that would suggest an effort to retrieve or conceal the weapon. *People v. Grant*, 339 Ill. App. 3d 792, 798 (2003). Control may be shown by evidence that the defendant had the intent and capability to maintain control and dominion over the weapon. *Anderson*, 2018 IL App (4th) 160037, ¶ 32. Control over the location where the weapon was found gives rise to an inference that the defendant possessed the weapon. *McCarter*, 339 Ill. App. 3d at 879.

¶ 28    Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the defendant constructively possessed the handgun, *i.e.*, had knowledge of and immediate access to the gun. The defendant was found approximately five feet away from the handgun. He was lying in a bed, which supports

the inference that he had not just entered the bedroom, but rather, had been in the bedroom long enough to have been able to view the closet and its contents. The closet's doors were open. The handgun was sitting on top of a laundry bin in the closet with clothes underneath it, but not on top of it. No one else was present in the apartment, there was men's clothing in the closet, and the defendant told the police that he stayed at the apartment from time to time. From this evidence, we find it was reasonable for the trial court to conclude that the defendant knew of the handgun's presence and exercised immediate and exclusive control over the area where it was found. See, *e.g.*, *People v. Hill*, 226 Ill. App. 3d 670, 671-73 (1992) (finding constructive possession of a handgun recovered from an open armoire four to six feet from where the defendant was lying in a bed in his residence).

¶ 29    In reaching this conclusion, we are mindful of the defendant's assertion that the handgun was not readily visible from the bed where he was lying. However, his argument is based solely on the photographs of the bedroom and the closet. We have viewed the photographs as they appear in the record on appeal and do not find that they establish that his view of the handgun was obstructed by piles of clothing or by other items. People's Exhibit 2, the photograph of the room, is dark and shadowy to the point that it cannot even be discerned that there is a bed in the room. People's Exhibits 3 and 4, which are photographs depicting the handgun, are of better quality. However, while it is clear from these two photographs that there were items of clothing in the closet, we cannot agree with the defendant that the photographs establish that there was clothing "piled higher on the side of the bin closest to the bed" so as to obstruct the defendant's view of the handgun from the bed.

¶ 30    We further find that the defendant's cited case, *People v. Wright*, 2013 IL App (1st) 111803, is distinguishable. In *Wright*, this court found that the State failed to prove that the defendant knowingly possessed a gun where the defendant did not live at the residence that was searched, the defendant tripped and fell in the basement area where the gun was then found underneath him, no physical evidence linked the defendant to the gun, and three other unidentified people were also present in the basement at that time. *Id.* ¶ 26. In contrast to *Wright*, in this case, the defendant "stay[ed]" at the apartment from time to time; was the only person present in the apartment at the time of the search; and was sleeping in the bedroom where the gun was recovered. In this case, unlike *Wright*, it would be reasonable to infer that the defendant had the exclusive or immediate control over the area where the handgun was found. See *People v. Anderson*, 2018 IL App (4th) 160037, ¶¶ 32-34 (distinguishing *Wright* and finding constructive possession where no people other than the defendant were present in the yard where a handgun was recovered).

¶ 31    The defendant next contends that his trial counsel was ineffective for failing to move to suppress his statement that he sometimes stayed at the apartment. He argues that he made this inculpatory statement during a custodial interrogation but without having been given *Miranda* warnings and that, therefore, a motion to suppress the statement based on a *Miranda* violation would have been meritorious. The defendant asserts that his counsel's failure to move to suppress the statement was unreasonable and cannot be attributed to trial strategy. He further maintains that he was prejudiced by counsel's failure because the trial court expressly relied on his statement in finding that he constructively possessed the handgun and thus there is a reasonable probability that the outcome of his trial would have been different had his statement been suppressed. As relief, he asks this court to reverse his convictions and remand the case for a suppression hearing.

¶ 32    The State responds that the defendant was not in custody for purposes of *Miranda* when he made the statement at issue, and that *Miranda* warnings were not required because the defendant was not subjected to an interrogation. As such, the State asserts, that a motion to suppress would have been denied and counsel was not ineffective for failing to file such a motion. Finally, the State maintains that the defendant has not shown prejudice because the outcome of the trial would not have been different even if his statement had been suppressed.

¶ 33    To succeed on a claim of ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that he was prejudiced by counsel's substandard representation. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When reviewing an allegation of ineffectiveness, we give deference to the trial court's findings of fact but make a *de novo* assessment of the legal issue of ineffective assistance counsel. *People v. Tayborn*, 2016 IL App (3d) 130594, ¶ 16.

¶ 34    In general, an attorney's decision regarding whether to file a motion to suppress is a matter of trial strategy that is entitled to great deference. *Id.* ¶ 17. However, counsel may be found ineffective for failing to file a motion to suppress evidence where (1) the unargued suppression motion is meritorious, *i.e.*, would have succeeded; and (2) there is a reasonable probability that the outcome of the trial would have been different had the evidence been suppressed. *People v. Henderson*, 2013 IL 114040, ¶¶ 12, 15.

¶ 35    Statements obtained as the result of custodial interrogation are subject to suppression if the person making the statement did not receive *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436 (1966); *Tayborn*, 2016 IL App (3d) 130594, ¶ 18. An interrogation is any practice that police should know is reasonably likely to evoke an incriminating response from a suspect. *Tayborn*,

2016 IL App (3d) 130594, ¶ 18. A custodial interrogation takes place when police initiate questioning of a person who has been taken into custody or deprived of his freedom of movement in any significant way. *Miranda*, 384 U.S. at 444; *Tayborn*, 2016 IL App (3d) 130594, ¶ 18.

¶ 36    Whether a defendant is in custody and, therefore, whether *Miranda* warnings are required, involves inquiry both into the circumstances surrounding the interrogation and, given those circumstances, whether a reasonable person would have felt he was not at liberty to terminate the interrogation and leave. *People v. Slater*, 228 Ill. 2d 137, 150 (2008). A number of factors are relevant in determining whether a statement was made in a custodial setting, including: (1) the location, time, length, mood, and mode of the questioning; (2) the number of police officers present during the interrogation; (3) the presence or absence of family and friends of the individual; (4) any indicia of a formal arrest procedure, such as the show of weapons or force, physical restraint, booking, or fingerprinting; (5) the manner by which the individual arrived at the place of questioning; and (6) the age, intelligence, and mental makeup of the accused. *Id.* Because no single factor is dispositive, a court must consider all of the circumstances in each case. *People v. Beltran*, 2011 IL App (2d) 090856, ¶ 37. After examining and weighing the various factors, the court must make an objective determination as to whether, under the facts presented, "a reasonable person, innocent of any crime" would have believed that he could terminate the encounter and was free to leave. *Slater*, 228 Ill. 2d at 150.

¶ 37    Generally, a defendant is required to raise a claim of ineffective assistance of counsel on direct appeal or risk forfeiting the claim. *People v. Veach*, 2017 IL 120649, ¶ 47. However, where a claim of ineffectiveness is based on counsel's failure to file a suppression motion, the record will frequently be incomplete or inadequate to evaluate that claim on direct appeal because the record

was not created for that purpose. *Henderson*, 2013 IL 114040, ¶ 22. In such situations, the claim of ineffectiveness may be better suited to a collateral proceeding. *Veach*, 2017 IL 120649, ¶ 46. When an ineffective assistance claim depends on facts that are not found in the record, procedural default will not preclude a defendant from raising it on collateral review. *Id.* ¶ 47.

¶ 38    Here, we find that the record is inadequate and precludes us from resolving the defendant's ineffective assistance of counsel claim. In reaching this conclusion, we are mindful that our supreme court has cautioned against categorically determining that all ineffective assistance claims are better suited to collateral review. *Veach*, 2017 IL 120649, ¶ 46. Rather, our supreme court has instructed this court to "carefully consider each ineffective assistance of counsel claim on a case-by-case basis" to determine if the circumstances permit us to adequately address a defendant's claim of ineffective assistance of counsel on direct review before deferring consideration of the claim to collateral review. *Id.* ¶ 48.

¶ 39    Here, after a careful review of the record, we decline to consider the defendant's claim of ineffectiveness because the record is devoid of evidence that would allow this court to determine whether a motion to suppress would have been granted. The defendant's claim of ineffectiveness is premised on his assertion that the statement he made was the result of a custodial interrogation by Passamentt without *Miranda* warnings. However, the record reveals that the context and circumstances of the statement that the defendant made were never developed and remain unclear.

¶ 40    The record is devoid of factual information on numerous relevant points. Most importantly, the record is silent as to whether Passamentt or any other officer actually did or did not advise defendant of his *Miranda* rights. In addition, the record does not reveal who else other than Passamentt and defendant was present at the time of the statement, whether there was a show of

weapons by Passamentt or other police officers, what or how many questions Passamentt posed to the defendant; or any description of the defendant's intelligence and mental ability. Finally, while some evidence was adduced regarding the defendant's location at the time that he made his statement, the evidence was ambiguous. Passamentt's testimony on direct examination suggested that the defendant was still in the bedroom. But on cross-examination, Passamentt agreed that he asked the defendant his name, handcuffed him, and relocated him to the front steps, and that "in the course at that point in time," he asked the defendant if he lived at the apartment and the defendant answered, "I stay there from time to time." In our view, this testimony leaves open to interpretation at what point "in the course" of events the defendant made the statement which he now seeks to suppress.

¶ 41 The record as it exists is inadequate for us to determine whether the police acted lawfully under the circumstances; whether defense counsel's decision not to file a motion to suppress was strategic; or whether such a motion likely would have been granted. Based on this record, defendant's assertion that his statement was the result of a custodial interrogation without *Miranda* warnings is speculation. Given the inadequacy of the factual record with regard to the circumstances of the defendant's statement, we are unable to review his claim of ineffective assistance of counsel in this direct appeal. See *Veach*, 2017 IL 120649, ¶ 46. Because the defendant's claim of ineffectiveness is based on facts that are not found in the record before this court at this time, it is better suited to a collateral proceeding where the parties would have an opportunity to develop a factual record that bears precisely upon the issue. *Id.* ¶¶ 44-47.

¶ 42 CONCLUSION

¶ 43   For the reasons explained above, we affirm the judgment of the circuit court of Cook County.

¶ 44   Affirmed.