Docket No. 108089.

# IN THE
# SUPREME COURT
## OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant v. ANTHONY OLIVER, Appellee.

*Opinion filed March 18, 2010.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

The issue in this appeal is whether a police officer's request to search the trunk of a driver's vehicle, following the consensual search of its interior after a valid traffic stop, violates defendant's constitutional right to be free from unreasonable searches and seizures (U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6). The circuit court of Henry County denied defendant's motion to suppress the evidence recovered from his vehicle's trunk. Ultimately, defendant was convicted of two controlled-substance offenses. A majority of the appellate court reversed, concluding that defendant was subjected to an unlawful seizure when the officer requested to search the trunk. 387 Ill. App. 3d 1045, 1052. For the reasons that follow, we reverse the judgment of the appellate court and affirm the

circuit court's judgment.

## I. BACKGROUND

Following a traffic stop in the early morning hours of November 14, 2002, Deputy Sheriff Glenn Hampton recovered cocaine from the trunk of defendant's vehicle. After being arrested and taken to the police station, defendant signed a statement admitting the cocaine was his, but he denied any intent to sell it. Defendant was charged with possession of a controlled substance and possession of a controlled substance with intent to deliver. Defendant's passenger, Orlando James, was also charged with the same offenses.

Defendant filed a pretrial motion to quash arrest and suppress his confession, arguing, in relevant part, he was subjected to an illegal seizure. Codefendant James also filed a motion to suppress. With the parties' agreement, the trial court conducted a consolidated suppression hearing on those motions.

At the suppression hearing, Officer Hampton testified he stopped defendant's car for following another vehicle too closely in a construction zone. When Officer Hampton asked defendant for his driver's license, defendant produced an Illinois identification card. Officer Hampton did not observe anything suspicious inside defendant's vehicle, but he did notice a strong-smelling fragrance he suspected of masking the smell of contraband. While radioing defendant's information from the Illinois identification card to police dispatch, Officer Hampton placed defendant in the passenger seat of his squad car. Officer Hampton learned that defendant was not the registered owner of the vehicle and did not have a valid Illinois driver's license. Defendant's passenger, James, however, had a valid Illinois driver's license.

After receiving this information, Officer Hampton, still inside the squad car with defendant, returned defendant's identification card, explained he was not going to arrest defendant for operating a vehicle without a license, and told defendant he was free to leave if James drove the car. Officer Hampton also asked defendant if he had any weapons or contraband inside the vehicle. Defendant replied that he did not. Officer Hampton then asked defendant if he was sure, and defendant responded, "If you want to search it, go ahead." Officer

-2-

Hampton estimated that the time between when he stopped the vehicle and when defendant gave consent to search the car was less than 10 minutes.

Officer Hampton returned to defendant's vehicle and explained to James that defendant had consented to a search of the vehicle. Officer Hampton asked James if he could search the vehicle, and James replied affirmatively. Officer Hampton estimated he searched the interior of the car for between 10 and 15 minutes. During the search, Officer Hampton had defendant stand at the front of the vehicle and James at the rear of the vehicle. Officer Hampton found no contraband inside the vehicle.

Upon completion of the interior search, Officer Hampton asked defendant and James if there was any contraband in the vehicle's trunk. Both replied negatively, explaining the trunk contained only clothing. Officer Hampton next asked to search the trunk, and defendant and James both consented. During his search of the trunk, Officer Hampton recovered a plastic bag of cocaine. Officer Hampton then arrested defendant and James. According to Officer Hampton, defendant and James never withdrew their consent for the interior and trunk searches. Defendant and James were not handcuffed during the stop, and neither asked if they were under arrest or free to leave. Officer Hampton was the only police officer present during the traffic stop and subsequent searches.

In response, defendant testified that after Officer Hampton received the information from the radio dispatch, he told defendant he was free to go. Defendant denied, however, that he gave Officer Hampton permission to search the car. Instead, defendant stated that Officer Hampton simply told defendant he would search the car and, if he did not find any contraband, he would let them leave if James drove. Officer Hampton did not ask defendant for his consent to search. During this conversation, defendant was locked inside the police car alone with Officer Hampton. Although defendant felt free to leave when Officer Hampton told him he could go, he no longer believed he was free to leave when Officer Hampton told defendant he was going to search the vehicle.

Officer Hampton made defendant stand at the front of the vehicle during the search. According to defendant, Officer Hampton opened the trunk from inside the vehicle during the interior search. Officer

Hampton then searched the trunk of the vehicle. Defendant testified Officer Hampton did not ask for permission to search the interior or the trunk. Defendant did not hear Officer Hampton ask James for permission to search the interior and trunk.

James also testified, and he denied that Officer Hampton asked him for permission to search the vehicle's interior and trunk. James could not hear the conversation between defendant and Officer Hampton when they were inside the police car. After the interior search, James saw Officer Hampton remove the key from its ignition and use the key to open the trunk.

Upon hearing the disputed evidence, the trial court entered a detailed written order, including factual findings, and denied defendant's motion to suppress. The court found that the traffic stop was justified and did not constitute an illegal detention. After observing the credibility of the witnesses, including their demeanor during testimony, and making reasonable inferences from the evidence, the court further found that defendant and James felt free to leave when Officer Hampton asked for consent to search, and defendant voluntarily consented to a search of his vehicle's interior and trunk.

The appellate court reversed, holding that defendant's motion to suppress should have been granted. *People v. Oliver*, No. 3–04–0427 (2006) (unpublished order under Supreme Court Rule 23). We denied the State's petition for leave to appeal, but, exercising our supervisory authority, directed the appellate court to vacate its judgment and reconsider in light of *Illinois v. Caballes*, 543 U.S. 405, 160 L. Ed. 2d 842, 125 S. Ct. 834 (2005), and *People v. Caballes*, 221 Ill. 2d 282 (2006).

On remand, the appellate court again reversed the trial court's judgment. *People v. Oliver*, No. 3–04–0427 (2007) (unpublished order under Supreme Court Rule 23). We denied the State's petition for leave to appeal, but, again exercising our supervisory authority, directed the appellate court to vacate its judgment and reconsider in light of *People v. Cosby*, 231 Ill. 2d 262 (2008).

On remand for the second time, a majority of the appellate court reversed the trial court's judgment. The court concluded the police officer's request to search the vehicle's trunk after conducting a

-4-

consensual search of the interior constituted an unconstitutional seizure and invalidated defendant's consent, requiring suppression of the evidence recovered from the trunk. The dissenting justice argued that this court's decision in *Cosby* was based on facts "nearly identical" to those of this case and upheld a search under similar circumstances. 387 Ill. App. 3d at 1053 (Carter, J., dissenting).

We allowed the State's petition for leave to appeal. 210 Ill. 2d R. 315.


## II. ANALYSIS

On appeal, the State challenges the appellate court's reversal of the trial court's order denying defendant's motion to suppress the evidence recovered from his trunk. When reviewing a trial court's suppression ruling, this court applies a two-part standard of review. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006), citing *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996); *Cosby*, 231 Ill. 2d at 271. The trial court's factual findings are entitled to great deference, and we will reverse them only if they are against the manifest weight of the evidence. *Cosby*, 231 Ill. 2d at 271, quoting *Luedemann*, 222 Ill. 2d at 542. The trial court's ultimate legal ruling on whether suppression is warranted, however, is reviewed *de novo*. *Cosby*, 231 Ill. 2d at 271, quoting *Luedemann*, 222 Ill. 2d at 542.

Citing *Cosby*, the State argues defendant's seizure during the traffic stop terminated when the officer told defendant he was free to leave and the officer's request to search the trunk after searching its interior did not constitute a subsequent unconstitutional seizure. The State further argues that none of the factors recognized by the United States Supreme Court in *United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980), or any other relevant factors supporting a finding of a subsequent seizure, are applicable in this case. The State therefore maintains the trial court properly denied defendant's motion to suppress because he was not seized when Officer Hampton sought consent to search the trunk.

Defendant responds that, although he voluntarily consented to an interior search, his subsequent consent to search the trunk was involuntary because he was unconstitutionally seized by the time

Officer Hampton sought his consent to search the trunk. Citing *Mendenhall*, defendant argues that a person cannot voluntarily consent to a search if he is illegally seized when he gives consent. Thus, defendant argues the appellate court properly reversed the trial court's suppression ruling because his consent to search the trunk was invalid when given during an unconstitutional seizure, requiring suppression of the evidence recovered from the trunk.

As a preliminary matter, we note it is undisputed that Officer Hampton's traffic stop itself was a constitutionally permissible seizure. The parties also agree that the initial traffic-stop seizure ended before Officer Hampton sought consent to search. The parties disagree, however, on whether defendant was illegally seized when Officer Hampton sought consent to search the vehicle's trunk after completing the consensual interior search. Accordingly, the sole issue we consider in this appeal is whether defendant was seized within the meaning of the fourth amendment when Officer Hampton asked to search the trunk after the valid traffic stop and consensual interior search. See *Cosby*, 231 Ill. 2d at 276 (when an officer asks for consent after a traffic stop has ended, the relevant question is whether the officer's actions constituted an unconstitutional seizure).

The fourth amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The Illinois Constitution of 1970 similarly protects an individual's right to be free from unreasonable searches and seizures. Ill. Const. 1970, art. I, §6; see also *People v. Caballes*, 221 Ill. 2d 282, 314-16 (2006) (Illinois' constitutional search and seizure provision interpreted consistently with federal provision).

It is settled that "[t]he purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *Mendenhall*, 446 U.S. at 553-54, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877, quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554, 49 L. Ed. 2d 1116, 1126, 96 S. Ct. 3074, 3081 (1976). Thus, individuals may challenge the government's actions under the fourth amendment if their freedom of movement is restrained by means of physical force or a show of authority. *Brendlin v. California*, 551 U.S. 249, 254, 168

L. Ed. 2d 132, 138, 127 S. Ct. 2400, 2405 (2007); *Cosby*, 231 Ill. 2d at 273-74, citing *Mendenhall*, 446 U.S. at 553, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.

In *Cosby*, this court used the *Mendenhall* standard to determine whether the driver of a vehicle was seized when, after a traffic stop ended, the police officer sought consent to search the vehicle. *Cosby*, 231 Ill. 2d at 276. Under the *Mendenhall* standard, a person has been seized when, considering the totality of the circumstances, a reasonable person would believe he was not free to leave. *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. The *Mendenhall* Court recognized four factors indicating a seizure without the person attempting to leave: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person; or (4) using language or tone of voice compelling the individual to comply with the officer's requests. *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877; see also *People v. Murray*, 137 Ill. 2d 382, 390 (1990) (adopting *Mendenhall* standard); *Luedemann*, 222 Ill. 2d at 553 (same).

The *Mendenhall* factors are not designed to be exhaustive, however, and coercive behavior similar to those factors may also constitute a seizure. *Luedemann*, 222 Ill. 2d at 557. Nonetheless, we have recognized that the absence of any *Mendenhall* factors "is highly instructive" on the issue of whether a seizure has occurred. *Luedemann*, 222 Ill. 2d at 554. Accordingly, in *Cosby*, this court concluded that the two defendant drivers in consolidated appeals had not been seized by officers who asked for consent to search their vehicles after traffic stops when none of the four *Mendenhall* factors were present. *Cosby*, 231 Ill. 2d at 288.

Here, as defendant concedes, three of the four *Mendenhall* factors are indisputably absent. Officer Hampton was the sole police officer involved, he did not display his weapon, and he did not make physical contact with defendant. On the fourth factor, the officer's use of compelling language or tone of voice, defendant contends that we should infer that Officer Hampton used compelling language to secure defendant's compliance simply because defendant ultimately complied with Officer Hampton's request. As defendant acknowledges, however, the record contains no testimony or other evidence of Officer Hampton using a compelling tone or language.

-7-

Absent any evidentiary support, we necessarily reject defendant's position. Thus, as in *Cosby*, none of the *Mendenhall* factors are present in this case.      Nevertheless, defendant contends an additional factor exists showing he was seized, making this case distinguishable from *Cosby*. According to defendant, unlike *Cosby* when the officer sought consent immediately following the traffic stop, here the officer sought consent to search the trunk only after 10 to 15 minutes had elapsed for the consensual interior search. Defendant maintains he was not free to leave during this time and Officer Hampton chose defendant's waiting location. Based on these circumstances, defendant contends he was illegally seized when he was asked to consent to the search of his trunk.

We cannot accept defendant's argument, however, because it would transform every consensual vehicle search into an unconstitutional seizure. Obviously, defendant had to wait somewhere while Officer Hampton conducted the consensual interior search of his vehicle. By its very language, "[t]he touchstone of the fourth amendment is reasonableness." *Leudemann*, 222 Ill. 2d at 566, citing *United States v. Knights*, 534 U.S. 112, 118, 151 L. Ed. 2d 497, 505, 122 S. Ct. 587, 591 (2001). In our view, it was entirely reasonable for Officer Hampton to direct defendant and his passenger to stand at opposite ends of the vehicle parked safely along the roadside after receiving consent to search. Simply put, in the complete absence of any of the *Mendenhall* factors, defendant's 10 to 15 minute wait while Officer Hampton conducted the consensual interior search cannot be construed as constituting an unconstitutional seizure. An individual's agreement to wait during a consensual search is inherent in the consent he gives for that search and the individual cannot later complain the search time constituted an improper seizure.

This conclusion is consistent with the trial court's findings that defendant felt free to leave after the traffic stop ended and voluntarily consented to the subsequent searches. Although defendant testified he did not feel free to leave when Officer Hampton sought consent to search and denied giving consent to search, the trial court is responsible for weighing the credibility of the witnesses at suppression hearings. *People v. Slater*, 228 Ill. 2d 137, 149 (2008). Here, the trial court resolved the conflicting testimony in favor of Officer Hampton. Reviewing the court's factual findings with the

appropriate level of deference, we do not find them to be against the manifest weight of the evidence. *Cosby*, 231 Ill. 2d at 271, quoting *Luedemann*, 222 Ill. 2d at 542.

Thus, in accordance with *Mendenhall* and *Cosby*, we conclude defendant was not seized within the meaning of the fourth amendment when Officer Hampton asked for consent to search his trunk. Because defendant was not unconstitutionally seized when he gave consent to search the trunk, his consent and the subsequent search were valid, and the appellate court erred when it reached the opposite conclusion.

## III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court. The circuit court's judgment is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*