2021 IL App (1st) 192056-U

No. 1-19-2056

Order filed May 19, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | No. 18 CR 10474 |
| | ) | |
| | ) | Honorable |
| CHRISTOPHER COLEMAN, | ) | Nicholas R. Ford and |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judges, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Denial of defendant's motion to suppress was not erroneous where officers had a reasonable suspicion of criminal activity prior to his seizure. Defendant forfeited his argument that police improperly searched a vehicle without a warrant where he raised the issue for the first time on appeal. The evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Christopher Coleman was found guilty of armed

habitual criminal (AHC), possession of a firearm with defaced identification marks, and possession

with intent to deliver substances containing fentanyl and heroin, cocaine, and cannabis, and was sentenced to a total of seven years' imprisonment. On appeal, defendant argues the court erred in denying his motion to suppress evidence seized from a vehicle where the police were not justified in stopping him pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), or in conducting a warrantless search of the vehicle. Defendant also argues the State did not prove that he intended to deliver the drugs found in the vehicle. For the following reasons, we affirm.

¶ 3    Defendant was indicted for AHC (720 ILCS 5/24-1.7(a) (West 2018)) (count I), possession with intent to deliver 1 to 15 grams of fentanyl and heroin (720 ILCS 570/401(c)(1.5) (West 2018)) (count II), unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2018)) (counts III-IV), possession with intent to deliver less than 1 gram of cocaine (720 ILCS 570/401(d) (West 2018)) (count V), possession of a firearm with defaced identification marks (720 ILCS 5/24-5(b) (West 2018)) (count VI), violation of the Firearm Owners Identification (FOID) Card Act (430 ILCS 65/2(a)(1) (West 2018)) (count VII), and possession with intent to deliver 10 to 30 grams of cannabis (720 ILCS 550/5(c) (West 2018)) (count VIII).

¶ 4    Prior to trial, defendant filed a motion to suppress evidence alleging that officers stopped, searched, and arrested him without a warrant or consent, and recovered evidence from an area where he had a reasonable expectation of privacy. Defendant argued that when the stop occurred, "no reasonable person could have inferred that he was in violation of any law," and therefore, the search and seizure was unreasonable.

¶ 5    The cause proceeded to a hearing.[1] In his opening statement, defense counsel stated that the motion to suppress addressed a "search of a vehicle" that officers performed "without probable cause," and the evidence they recovered should be suppressed.

¶ 6    Defendant called Chicago police officer Angel Collazo, who testified that on June 26, 2018, at approximately 8:26 p.m., he and five other officers were in two unmarked vehicles in plain clothes on the 300 block of North Latrobe Avenue in Chicago, an area of high narcotic sales and gang violence. From the front passenger seat, Collazo saw defendant, whom he identified in court, standing by the trunk of a white Kia sedan. Defendant rolled and licked a brown paper cigar the length of half a pencil. Collazo believed it contained cannabis. Collazo observed defendant from 100 feet away while the officers' vehicle was traveling around 20 miles per hour. The streetlights were coming on, but there was still sunlight.

¶ 7    Collazo's vehicle stopped parallel to the Kia. The Kia's windows were open, no one was inside, and the motor was running.  Collazo did not smell narcotics from the Kia. Defendant walked away from Collazo's vehicle, and Collazo and other officers exited and approached him. Collazo still did not smell cannabis. Defendant stated, "I'm about to smoke some weed, I just didn't want to smoke in my car." Collazo knew defendant was referring to the Kia because it was the only vehicle running with the windows down, and was parked close to defendant. At that time, defendant was not free to leave because the officers were investigating whether defendant smoked cannabis on the street.

¶ 8    The officers spoke to defendant and recovered the paper he was rolling. Defendant did not admit to actually smoking cannabis. Collazo went to the driver side of the Kia and saw a coffee

---

[1] The Honorable Nicholas R. Ford presided over the hearing on the motion to suppress evidence.

can on the front passenger seat that contained suspect cannabis in clear plastic bags. He entered the vehicle and found approximately 15 bags of suspect cannabis, 7 bags of suspect heroin, and 4 bags of suspect crack cocaine in the can. He removed the items, alerted his partners, and told them to arrest defendant.

¶ 9    Collazo then conducted an inventory search of the vehicle while defendant was on the sidewalk with the other officers. Documents bearing defendant's name were found in the glovebox and inventoried. Collazo also found a black semiautomatic handgun with live ammunition in the trunk. Defendant was taken to the police station, read his rights, and said the Kia belonged to his wife. The Kia was also taken to the police station, where a second inventory search occurred.

¶ 10    On cross-examination, Collazo testified that he had seen people roll brown paper cigars containing cannabis "dozens and dozens of times."

¶ 11    Ronald Rainey testified that defendant was married to Ronald's niece, Wynonia Rainey.[2] On June 26, 2018, Ronald lived in an apartment on the 300 block of North Latrobe. Around 8:30 p.m., Ronald stood on the sidewalk in front of his building and saw defendant walking north on Latrobe from Fulton Street. Defendant was alone and holding a cigar. When defendant was about 15 feet from Rainey, two vehicles stopped and two detectives exited. They had visible firearms and badges, and told defendant "to come here." He complied. The detectives took the cigar, searched him, handcuffed him, and walked him to one of their vehicles. They spoke with defendant and then went to Wynonia's white vehicle, which was running with the windows open. Detectives opened the vehicle, looked inside, and retrieved something from the trunk.

---

[2] Ronald Rainey shares the same last name as his niece, Wynonia Rainey, so we will refer to both by their first names in this order.

¶ 12    On cross-examination, Ronald stated that he did not see Wynonia during the incident and did not know if defendant drove Wynonia's vehicle to the block where the search occurred.

¶ 13    The State entered stipulations that Ronald had two felony convictions for possession of a controlled substance in 2008 and 2014.

¶ 14    In closing, defense counsel argued that "the motion is about" whether Collazo "had plain view observation of narcotics in the car from outside the car." Counsel questioned whether Collazo could see the coffee can located on the passenger side of the vehicle from his position on the driver side, and argued that if Collazo had to enter the vehicle to determine what the coffee can contained, he did so without probable cause. Consequently, the entry and inventory search were not justified.

¶ 15    The court denied the motion to suppress evidence. The court stated that officers observed defendant holding an item that, based on their experience, they believed to be cannabis, and pursuant to these observations lawfully arrested him. The court added that defense counsel "definitely narrowed this down," and "at its most basic," the issue was whether Collazo observed the cannabis in plain view prior to entering the vehicle. The court stated that it would "presume" defendant had standing to challenge the search of the vehicle, and that it believed that Collazo saw the cannabis from outside the vehicle, which subjected the vehicle to seizure, removal from the scene, and an inventory search. In so holding, the court found strong circumstantial evidence that defendant arrived in the Kia, as it was "running *** right there" and defendant asserted that he did not want to smoke marijuana in his vehicle. Finally, the court reiterated that defendant's "arrest was lawful" because it was "uncontradicted" that he held a cigar "that had been remanufactured for *** cannabis."

¶ 16    Defendant then filed a motion to bar police testimony based on a violation of the Law Enforcement-Worn Body Camera Act (Act) (50 ILCS 706/10-1 *et seq.* (West 2018)).[3] Specifically, defendant alleged that he made an inculpatory statement during an interrogation that was not electronically recorded by police, and that "a recording of the investigation, his arrest and the questioning session was intentionally not captured, destroyed, [or] altered" in violation of the Act and Chicago Police Department Special Order S03-14.[4]

¶ 17    At a hearing on the motion, defense counsel asked that the court assign little or no weight to police testimony that defendant made a statement in custody because the officers did not wear or request body cameras at the police station. The State argued that the officers had not been issued body cameras, the interview did not have to be recorded, and the fact it was not recorded should affect the weight of the officers' testimony and not its admissibility. The court permitted defendant to cross-examine the officer as to why the alleged statement was not recorded, and stated it would take the lack of recording into consideration in hearing the evidence.

¶ 18    Prior to trial, the State nol-prossed counts III and IV for UUWF and count VII for violating the FOID Card Act.

¶ 19    Collazo testified consistently with his pretrial testimony regarding how he observed defendant rolling cigar paper by the Kia, and that defendant stated that he was "about to smoke weed" but "didn't want to smoke in my car."

---

[3] The Honorable Diana L. Kenworthy presided over the hearing on the motion to bar testimony and the bench trial.

[4] Defendant's motion cited to a version of Chicago Police Department Special Order S03-14 with an effective date of June 9, 2017. The version of the order in effect on the date of the offense, however, had an effective date of April 30, 2018.

¶ 20    Collazo approached the Kia, which was unoccupied with its windows down and engine running. Looking inside, Collazo observed a coffee can containing a green, leafy substance that he believed was cannabis. Collazo entered the Kia and recovered the can, which contained 15 Ziploc bags of suspect cannabis, 7 Ziploc bags of a white powdery substance resembling heroin, and 4 Ziploc bags of a crushed, rock-like substance resembling crack cocaine. He searched the trunk and found a black semiautomatic 9-millimeter Taurus handgun with a defaced serial number, and narcotics packaging, specifically several Ziploc bags of different sizes and sandwich bags. The smallest bags were about the size of a quarter, and Collazo testified they are used to package narcotics for sale. Documents bearing defendant's name were found in the glovebox. Defendant was arrested and taken to the police station.

¶ 21    At the station, Officer Tellez read defendant his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and defendant agreed to speak.[5] He told Collazo and Tellez that he drove his wife's Kia from the suburbs to visit people on Latrobe, and he was waiting for his uncle to leave the house. Defendant was about to smoke weed, and the "work" found in the vehicle was his "side hustle [he does] on the phone." Collazo explained that "work" commonly refers to narcotics, and a "phone hustle" or "side hustle" refers to someone receiving calls and delivering narcotics to a customer on the street. Defendant stated that he kept the firearm in the trunk when he was parked.

¶ 22    On cross-examination, Collazo testified that he did not see defendant in the Kia. Defendant was a few feet from the rear of the Kia when Collazo approached with several officers. Collazo wore a bulletproof vest and a duty belt with a firearm and badge, and told defendant to stop. Defendant turned and faced Collazo. Collazo could not recall if he announced his office. Defendant

---

[5] Only Officer Tellez's last name is in the record.

was arrested after the narcotics were found in the Kia, but Collazo could not recall if defendant had the keys on him or to whom the vehicle was registered. The can seized from the Kia had a false bottom, but the narcotics in the can were visible through the window of the Kia.

¶ 23    Collazo's unit was not assigned body cameras, and he did not ask anyone else to record defendant's statement at the police station as this was not common practice for his unit. The police station had body cameras, but he saw no one with body cameras on the night of the interview. Collazo took defendant's statement and documented it in the case report.

¶ 24    On redirect, Collazo identified People's Exhibit No. 1, the coffee can in which the narcotics were found, and People's Exhibit No. 2, a sealed envelope bearing defendant's name that was recovered from the vehicle and had a mailing date of October 6, 2016.

¶ 25    The State entered a stipulation that the firearm recovered from the trunk of the vehicle was a 9-millimeter semiautomatic handgun loaded with live rounds, and that defendant had two convictions for UUWF in 2013 and 2017. Finally, the State stipulated that a forensic chemist would testify that he received three groups of inventoried items. In the first group, four items weighing a total of 1.3 grams tested positive for heroin and fentanyl. In the second group, one item weighing 0.1 grams tested positive for cocaine. In the third group, 10 items weighing a total of 30.7 grams tested positive for cannabis.

¶ 26    Following argument, the court found that Collazo was credible and did not intentionally choose not to record evidence, but instead was not issued his own body-worn camera. The court found defendant guilty of AHC (count I), possession of fentanyl and heroin with intent to deliver (count II), possession of cocaine with intent to deliver (count V), possession of a firearm with

defaced identification marks (count VI), and possession of cannabis with intent to deliver (count VIII).

¶ 27     Defendant filed a posttrial motion which argued that the court erred in denying his motion to suppress evidence where he was "merely standing behind a vehicle" when officers surrounded him without "probable cause or reasonable suspicion that he had committed a crime," and erroneously denied the motion to suppress his statement where the Chicago Police Department violated the Act by not assigning body cameras to Collazo's unit and Collazo did not procure one for defendant's interview. Defendant also posited that the evidence was insufficient to prove his guilt.

¶ 28     At the hearing, counsel argued in relevant part that the police merely observed defendant "holding something in his hand" and "had no probable cause to surround him since they hadn't seen him commit any crime." According to counsel, defendant's statement about "having a blunt and trying to roll it was prompted by [the officers'] seizure of him when they surrounded him," and therefore, he was arrested without probable cause.

¶ 29     The court denied the motion. Following a hearing, the court sentenced defendant to concurrent prison terms of six years for AHC, two years for possession of a firearm with defaced identification marks, seven years for possession with intent to deliver fentanyl and heroin, three years for possession with intent to deliver cocaine, and one year for possession with intent to deliver cannabis. The record does not show that defendant filed a postsentencing motion.

¶ 30     On appeal, defendant first argues that the court erred in denying the motion to suppress evidence because officers lacked a reasonable articulable suspicion to support a *Terry* stop. At the

outset, the State claims that defendant raises this argument for the first time on appeal, and therefore, forfeited it under *People v. Hughes*, 2015 IL 117242.

¶ 31    In *Hughes*, the defendant filed a pretrial motion to suppress statements, arguing that " 'due to [his] physical, physiological, mental, educational, psychological state, capacity and condition *** he was incapable and unable to appreciate and understand the full meaning of his *Miranda* rights,' " and consequently his confession to police was " 'involuntary.' " *Id.* ¶ 10. At the hearing on the motion, defense counsel argued that detectives handcuffed the defendant in an uncomfortable manner on the ride from Michigan where he was taken into custody, and questioned him during this ride without informing him of his *Miranda* rights. *Id.* ¶ 11. The trial court did not suppress the statements. *Id.* ¶ 15. Later, during closing argument at the defendant's bench trial, defense counsel repeatedly suggested that the defendant provided a " 'false confession voluntarily made.' " *Id.*  ¶ 42. In finding the defendant guilty, the trial court observed that his confession had "indicia of reliability," and did not address voluntariness. ¶ 22.

¶ 32    On appeal, the defendant argued that his confession was involuntary because of his age, education level, sleep deprivation, prior substance abuse, current emotional distress due to the death of his grandfather, and police deception. *Id.* ¶ 25. The appellate court reversed, finding that these claims were not forfeited insofar as the defendant raised the issue of voluntariness under sufficiently similar theories. *Id.* ¶ 27. The State appealed. *Id.* ¶ 3.

¶ 33    The Illinois Supreme Court found that the defendant's arguments on appeal, while not factually hostile to his arguments in the trial court, were almost wholly distinct and consequently not preserved. *Id.* ¶¶ 40, 45. The supreme court found the defendant adequately preserved the broad issue of the voluntariness of his confession, but presented no argument as to sleep deprivation, his

education level, his age, his emotional grief at the loss of his grandfather, or his abuse of drugs and alcohol. *Id.* ¶¶ 41, 50. The supreme court observed that the defendant knew all of this information at the time of the suppression hearing, yet the trial court did not have "the opportunity to consider the bulk of these arguments that the defendant's confession was involuntary," and the State could not rebut them because the defendant's arguments below focused on the reliability of the confession. *Id.* ¶¶ 41, 44. Accordingly, the defendant failed to create "an adequate record for the appellate court to review voluntariness under these new theories," and the appellate court should not have ruled thereon. ¶ 46. The supreme court reversed the appellate court's judgment on the suppression hearing, concluding the claims were not adequately preserved for review. ¶¶ 45, 50.

¶ 34    Turning to the present case, defendant filed a motion to suppress evidence that alleged his "conduct was such that no reasonable person could have inferred that he was in violation of any law" when officers stopped him. During the hearing on the motion, defense counsel elicited detailed information from Collazo regarding how the officers observed and approached defendant. In ruling on the motion, the trial court observed that officers saw defendant with cigar paper associated with cannabis use, and based on this observation, confronted and ultimately arrested him. Although, at the hearing, trial counsel advised the court that the motion was "about" whether Collazo had plain view of the narcotics in the vehicle, and the court acknowledged that counsel "narrowed" his argument, it is apparent that the court considered and ruled on the validity of the stop. Notably, defendant made a similar argument in his written posttrial motion, where he alleged that officers lacked "reasonable suspicion that he committed a crime" when they surrounded him. These arguments are based on the standards of *Terry*. See *People v. Timmsen*, 2016 IL 118181, ¶ 9 ("Pursuant to *Terry*, a police officer may conduct a brief, investigatory stop of a person where

the officer reasonably believes that the person has committed, or is about to, commit a crime."). Unlike in *Hughes*, the State had a chance to respond to this claim, the court had an opportunity to rule thereon, and the record is sufficiently developed for review on appeal. Consequently, this claim is not forfeited.

¶ 35    During a hearing on a motion to suppress evidence, a defendant has the burden of proof. *People v. Cregan*, 2014 IL 113600, ¶ 23. If the defendant makes a *prima facie* demonstration that officers obtained the evidence in an illegal search or seizure, the burden moves to the State to provide evidence to rebut the defendant's *prima facie* case. *Id.* "The ultimate burden of proof remains with the defendant, however." *Id.* When reviewing a trial court's denial of a motion to suppress evidence, we apply a bifurcated standard of review. *People v. Holmes*, 2017 IL 120407, ¶ 9. The trial court receives great deference on the factual findings, which are only reversed "if they are against the manifest weight of the evidence." *Id.* The court's ultimate legal ruling on the motion is reviewed *de novo*. *Id.*

¶ 36    "Both the Illinois Constitution (Ill. Const. 1970, art. I, § 6) and the fourth amendment to the United States Constitution (U.S. Const., amend. IV) protect individuals against unreasonable searches and seizures." *People v. Thomas*, 2019 IL App (1st) 162791, ¶ 18. Usually, "seizures require a warrant supported by probable cause." *People v. McMichaels*, 2019 IL App (1st) 163053, ¶ 15. However, under *Terry*, an officer may perform a brief, investigatory stop where the officer reasonably believes that the person is engaged in criminal activity. *Timmsen*, 2016 IL 118181, ¶ 9. The officer must have a "reasonable, articulable suspicion" that criminal activity is occurring. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); see also *People v. Close*, 238 Ill. 2d 497, 505 (2010)

("a police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to, commit a crime").

¶ 37    The first step is to determine when a defendant is seized for purposes of the fourth amendment. *McMichaels*, 2019 IL App (1st) 163053, ¶ 16. "[A]n individual is seized when an officer by means of physical force or show of authority, has in some way restrained the liberty of a citizen." (Internal quotation marks omitted.) *People v. Harris*, 228 Ill. 2d 222, 246 (2008). Described differently, where a reasonable person considering the totality of the circumstances believes he is not free to leave, he has been seized. *People v. Oliver*, 236 Ill. 2d 448, 456 (2010). Factors indicative of a seizure include "(1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person; or (4) using language or tone of voice compelling the individual to comply with the officer's requests." *Id.* (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

¶ 38    Here, the State argues that the stop initially was consensual. At trial, Collazo testified he saw defendant rolling cigar paper commonly used for cannabis, approached with other officers, and told defendant to stop walking away. Collazo wore a bulletproof vest and a duty belt with a firearm and badge, and Ronald testified the detectives' firearms and badges were visible. When defendant stopped in response to Collazo's command and turned to face the officers, he was seized because a reasonable person seeing multiple people with firearms and badges approach would not believe he is free to ignore the command and leave at that point. See *Oliver*, 236 Ill. 2d at 456; *People v. Jackson*, 389 Ill. App. 3d 283, 287-88 (2009) (defendant was seized when approached by officer in uniform, presumably carrying visibly holstered firearm, who commanded defendant to remove hands from pockets).

¶ 39    Having determined when officers seized defendant, the next step is to decide whether at that point in time officers reasonably believed defendant was engaged in criminal activity, justifying a *Terry* stop.

¶ 40    "To justify a *Terry* stop, officers must be able to point to specific and articulable facts that, considered with the rational inferences therefrom, make the intrusion reasonable." *McMichael*s, 2019 IL App (1st) 163053, ¶ 22. A finding of "reasonable suspicion must be based on commonsense judgments and inferences about human behavior, and due weight must be given to the reasonable inferences the officer is entitled to draw from the facts in light of his experience." *People v. Thomas*, 2019 IL App (1st) 170474, ¶ 19. Reasonable suspicion is a lower standard than probable cause, but an officer's "hunch or unparticularized suspicion is insufficient" to justify a reasonable suspicion. *McMichael*s, 2019 IL App (1st) 163053, ¶ 22. We will consider " 'the totality of the circumstances known to the officer' " and determine whether from the perspective of a reasonable officer there was a reasonable suspicion of criminal activity. *Id.* (quoting *In re Edgar C.*, 2014 IL App (1st) 141703, ¶ 97).

¶ 41    Collazo observed defendant rolling a brown paper cigar in an area of high narcotic sales. Collazo had seen people roll cannabis in brown paper cigars "dozens and dozens of times." The sight of defendant rolling cigar paper associated with cannabis use, and Collazo's experience as a police officer and knowledge of the area, gave rise to a reasonable suspicion that defendant was engaged in criminal activity. See *Wardlow*, 528 U.S. at 124 ("officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation"); see also *People v. Salgado*, 2019 IL App (1st) 171377, ¶ 33 ("defendant's *conduct* in a high crime area, not 'the possible observation of a gun

alone,' gave rise to a reasonable suspicion that he was committing or about to commit a crime" (emphasis in original)). Therefore, based on the totality of the circumstances, this was not a mere hunch and officers could conduct a brief, investigatory stop of defendant.

¶ 42    Defendant compares his case to *People v. Ocampo*, 377 Ill. App. 3d 150 (2007). In *Ocampo*, a detective saw a driver make a call before parking at a gas station, where the defendant entered the parked vehicle, and after a conversation with the driver, moved as if removing something from his pocket. *Id.* at 161-62. The detective saw no exchange of items or money prior to the defendant leaving and was not familiar with the area as a place for drug transactions, but felt based on his training and experience that the interaction was a drug transaction. *Id.* at 155. The defendant was seized based on the detective's observations. *Id.* at 155, 161. The trial court granted the defendant's motion to suppress and the State appealed. *Id.* at 155. The appellate court found that the detective solely relied on a hunch where he had no knowledge that the area had high crime and the defendant's actions were "simply far too common, without more, to give rise to a reasonable suspicion." *Id.* at 162-63.

¶ 43    In contrast, here Collazo testified that defendant was in an area of high narcotic sales, and he saw defendant rolling a brown paper cigar, which based on his experience was used for cannabis. The area, the action, and the item here, as opposed to the "common" actions in *Ocampo*, provided a reasonable suspicion.

¶ 44    Nevertheless, defendant argues that possessing up to 10 grams of cannabis is a civil violation and does not justify a *Terry* stop. See 720 ILCS 550/4(a) (West 2018). "[D]ecriminalization is not synonymous with legalization," however, and at the time of defendant's stop possession of cannabis was illegal. *In re O.S.*, 2018 IL App (1st) 171765, ¶ 29.

Accordingly, the officers' reasonable suspicion of cannabis possession justified an investigatory stop.

¶ 45    Defendant additionally argues that the trial court erred in denying the motion to suppress evidence because the officers lacked justification to conduct a warrantless search of the Kia and seize items that were not in plain view, namely, the firearm and plastic bags in the trunk. Specifically, defendant argues the inventory search of the Kia was merely a pretext, and the search was in fact investigatory and required a search warrant. The State also argues this claim is forfeited under *Hughes*.

¶ 46    Here, at the pretrial hearing, defense counsel did not contest the State's assertion that officers completed an inventory search of the Kia after defendant's seizure. Counsel solely argued that if the narcotics were not in plain view, the subsequent inventory search was not justified. Consequently, the State had no reason to respond to defendant's theory on appeal that the inventory search was pretextual or to argue that another exception to the search warrant requirement applied. No one at trial testified about inventory procedures, and the trial court accepted that items seized as inventory were admitted pursuant to an inventory search. Given the lack of argument and record on the issue, defendant has forfeited the claim. See *Hughes*, 2015 IL 117242, ¶ 46.

¶ 47    Notwithstanding, defendant argues that because Collazo conducted a warrantless search of the Kia, the State had the burden to introduce sufficient evidence that the search was an exception to the warrant requirement, and as this issue implicates the sufficiency of the evidence, it is not subject to forfeiture. In support of this theory, defendant relies on *People v. Woods*, 214 Ill. 2d 455 (2005), for the proposition that a challenge to the sufficiency of the evidence is not subject to forfeiture. *Woods* does not support defendant's argument, however, as it differentiated between

attacks on the sufficiency of the evidence regarding the elements of a crime, which were not subject to waiver, and attacks on the admissibility of evidence, which were subject to waiver. *Id.* at 473. Here, defendant challenges the admissibility of evidence obtained from a search, and has not preserved the issue. Consequently, we do not address the challenge to the inventory search.

¶ 48    Next, defendant challenges whether the State proved beyond a reasonable doubt that he had "knowledge or control" of the Kia and the items inside, or that he intended to deliver the controlled substances.

¶ 49    Where a defendant disputes the sufficiency of the evidence at trial, the appellate court, after reviewing the evidence in the light most favorable to the State, must determine if any rational trier of fact could have found each element of the crime proven beyond a reasonable doubt. *People v. Murray*, 2019 IL 123289, ¶ 19 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). The appellate court "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Davison*, 233 Ill. 2d 30, 43 (2009). The trier of fact is responsible for determining "the witnesses' credibility and the weight given to their testimony," resolving conflicts in the evidence, and drawing reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). "[W]e will not substitute our judgment for that of the trier of fact on these matters." *Id.* Therefore the trier of fact's findings will be given deference, although they are not conclusive. *Murray*, 2019 IL 123289, ¶ 19. A conviction will not be reversed " 'unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.' " *People v. Lloyd*, 2013 IL 113510, ¶ 42 (quoting *People v. Collins*, 214 Ill. 2d 206, 217 (2005)).

¶ 50    The elements of unlawful possession of a controlled substance with intent to deliver are that a defendant knowingly possess a controlled substance and intend to deliver it. 720 ILCS

570/401 (West 2018); *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 26. Conviction for possession of cannabis with intent to deliver requires the same elements with respect to cannabis. 720 ILCS 550/5(c) (West 2018); *People v. Moreno*, 334 Ill. App. 3d 329, 343-44 (2002).

¶ 51    Possession can be actual or constructive. *Jackson*, 2019 IL App (1st) 161745, ¶ 27. Constructive possession will exist when a "defendant has the intent and capability to maintain control and dominion over the contraband." *Id.* The State may prove constructive possession with evidence of the defendant's knowledge of the existence of the contraband, and "immediate and exclusive control over the area where the contraband was found." *Id.*

¶ 52    Intent to deliver may also be proven through circumstantial evidence. *People v. Chavez*, 327 Ill. App. 3d 18, 25 (2001). The supreme court has provided relevant factors that support a finding of intent to deliver, including, *inter alia*, "whether the quantity of controlled substance possessed is too large to be reasonably viewed as being for personal consumption; *** possession of any weapons; *** possession of drug paraphernalia; and *** the manner in which the controlled substance is packaged." *Id.* (citing *People v. Robinson*, 167 Ill. 2d 397, 408 (1995)). A defendant's intent to deliver will be determined on a case-by-case basis. *Id.*

¶ 53    In this case, Collazo observed defendant standing next to a parked, running Kia rolling a brown paper cigar, which, according to Collazo, is typically used for smoking cannabis. Defendant told Collazo that he did not want "to smoke in [his] car." In plain view on the front passenger seat of the vehicle, Collazo saw a coffee can with suspect cannabis exposed. In the can, Collazo found 15 bags of suspect cannabis, 7 bags of suspect heroin, and 4 bags of suspect crack cocaine. Tests confirmed that 10 items weighing 30.7 grams tested positive for cannabis, 4 items weighing 1.3 grams tested positive for heroin and fentanyl, and 1 item weighing 0.1 grams tested positive for

cocaine. In the trunk of the vehicle, Collazo found a firearm and bags commonly used for narcotics packaging, and in the glove box, officers recovered an envelope bearing defendant's name. At the police station, defendant told officers that he drove his wife's Kia to Latrobe, and the "work" in the Kia was his from his phone "side hustle." Collazo testified that "work" commonly means narcotics, and "side hustle" or "phone hustle" refers to a person receiving phone calls and delivering narcotics.

¶ 54    Viewing this evidence in the light most favorable to the State, defendant had constructive possession of the contraband where he gave a statement exhibiting knowledge of the narcotics and had immediate and exclusive control of the vehicle the narcotics were in. Defendant's intent to deliver is supported by the number of individual bags of narcotics, the loaded firearm, and the small Ziploc and sandwich bags in the trunk that were sized for the packaging of narcotics. See *People v. Clark*, 406 Ill. App. 3d 622, 631 (2010) (defendant's 24 individual packets of heroin was "an amount and packaging technique highly indicative of one's intent to deliver rather than to personally consume"). Defendant also told officers that he delivered narcotics. While defendant contends that the heroin, crack cocaine, and cannabis were for personal use, "[t]he trier of fact is not required to disregard inferences that flow normally from the evidence, nor to seek all possible explanations consistent with innocence and elevate them to reasonable doubt." *People v. Rutigliano*, 2020 IL App (1st) 171729, ¶ 80. Based on this evidence, viewed in the light most favorable to the State, defendant was proven guilty beyond a reasonable doubt.

¶ 55    Notwithstanding, defendant also argues that his statement to officers at the police station should receive "little weight" because it was obtained in violation of the Act (50 ILCS 706/10-1 *et seq.* (West 2018)). The Act requires that a written policy regarding the use of body cameras

must be adopted by law enforcement agencies that use body cameras. *Id.* § 20. Under the Act, if the trial court finds by a preponderance of the evidence that a recording was intentionally not captured in violation of the statute, then the court shall consider that violation in weighing the evidence. *Id.* § 30.

¶ 56 Prior to trial, defendant filed a motion arguing the court must consider a violation of the statute to weigh or bar officers' testimony regarding events which should have been recorded. Defendant's pretrial motion identified the Chicago Police Department's written policy on body cameras, Chicago Police Department Special Order S03-14, which states in part that all officers assigned to a patrol district normally assigned to field duties will have and utilize a body camera. The court stated it would weigh the absence of a recording when considering the evidence. At trial, Collazo testified he was in a gang enforcement unit, which was not assigned body cameras when he interviewed defendant. At the close of trial, the court found Collazo was credible and not in violation of the statute as he was not issued a body camera. The court's factual findings are reasonable, and it could rationally find that defendant did not present sufficient evidence that a recording of the statement was intentionally not recorded.

¶ 57 For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 58 Affirmed.