**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220190-U

Order filed August 23, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0190 Circuit No. 21-CM-128 |
| | ) | |
| KELVIN R. BROWN, | ) ) | Honorable Robert A. Miller, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Brennan and Hettel concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court properly denied defendant's motion to suppress evidence.

¶ 2    Defendant, Kelvin R. Brown, appeals his conviction for driving while license revoked arguing that the Du Page County circuit court erred by denying his motion to suppress evidence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Defendant was charged by superseding information with resisting or obstructing a peace officer (720 ILCS 5/31-1(a) (West 2020)) and driving while license revoked (625 ILCS 5/6-303(a) (West 2020)). Defendant filed a pretrial motion to suppress, alleging that he should have been given warnings as required by *Miranda v. Arizona*, 384 U.S. 436 (1966), before being questioned by officers. The State opposed the motion, arguing that it was not necessary for police to provide *Miranda* warnings because defendant was not in custody, and the questions asked of defendant were permissible as part of a detention pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968).

¶ 5    At a hearing on the motion, Officer James O'Connor testified. The squad car video of O'Connor's interactions was also introduced and played during O'Connor's testimony. O'Connor testified that he had been called to a gas station to investigate a possible violation of an order of protection on January 25, 2021. When O'Connor arrived, he was advised that the suspect was leaving the area in a gray sedan. O'Connor exited his vehicle and began walking toward the gas pumps. O'Connor observed a gray Toyota Camry exiting the gas station and flagged the car down by waving his arms.

¶ 6    The vehicle stopped, and O'Connor began speaking with the driver through the open passenger's side window. The driver was later identified as defendant. O'Connor informed defendant he was investigating a possible violation of an order of protection. O'Connor asked defendant to back his car up toward the pumps and exit his vehicle, which defendant did. O'Connor requested defendant's identification and obtained defendant's background information from dispatch. Dispatch advised that defendant's license was revoked, to which O'Connor responded "10-4."

¶ 7    O'Connor continued his investigation by entering the store to speak with the caller, Raymond Washington, and a clerk. As O'Connor entered the store, dispatch informed him there

was no active order of protection against defendant. Washington advised O'Connor he had not had any contact with defendant that day, but defendant had been bothering him recently, including threatening him the previous evening. Washington became concerned when defendant showed up at the gas station where he worked. Washington also informed O'Connor, unprompted, that defendant's driver's license was revoked.

¶ 8        O'Connor returned to defendant's car and told defendant there was no active order of protection but informed him his license was revoked. O'Connor asked defendant whether he had driven to the gas station, and defendant admitted to driving. O'Connor's squad car video recorded the following exchange: O'Connor told defendant, "The other problem is you're not supposed to be driving, right?" Defendant replied, "Yeah." Shortly afterward, O'Connor asked, "How'd you get here, you drove right?" Defendant responded, "Yeah, I did." Following this exchange, O'Connor placed defendant under arrest for driving while his license was revoked.

¶ 9        The circuit court denied defendant's motion to suppress his admission, stating that defendant had been initially detained pursuant to *Terry* when O'Connor flagged down his vehicle. The court observed that a *Terry* stop allows for temporary detention and questioning when the officer reasonably infers from the circumstances that the person is committing or is about to commit an offense. The court explained that O'Connor had reasonable suspicion to detain defendant initially to investigate the violation of an order of protection, but he obtained information in the course of that investigation suggesting defendant had committed the offense of driving while his license was revoked. O'Connor was therefore permitted to investigate whether his suspicion was justified.

¶ 10        After defendant's motion was denied, he proceeded to a jury trial and was convicted of driving while license revoked and resisting or obstructing a peace officer. He was sentenced to 180

days in the county jail. Defendant filed a motion for a new trial, which was denied, and this appeal followed.

¶ 11                                                    II. ANALYSIS

¶ 12         On appeal, defendant argues the circuit court erred in denying his motion to suppress. We review a circuit court's suppression ruling under a two-part standard. *People v. Oliver*, 236 Ill. 2d 448, 454 (2010). The court's factual findings will only be reversed if they are against the manifest weight of the evidence. *Id.* We review the court's legal determination of whether suppression is warranted *de novo*. *Id.*

¶ 13         The fifth amendment to the United States Constitution, which applies to the states under the fourteenth amendment, provides that " '[n]o person *** shall be compelled in any criminal case to be a witness against himself.' " *People v. Hunt*, 2012 IL 111089, ¶ 23 (quoting U.S. Const., amend. V). Accordingly, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. Those procedural safeguards include the right to be warned that he has the right to remain silent, that any statement he does make can be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed. *Id.* at 479.

¶ 14         Custodial interrogation includes "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. We have held that "custodial interrogation" consists of two elements: (1) whether an individual was subject to interrogation, and (2) whether the interrogation occurred in a custodial situation. *People v. Tayborn*, 2016 IL App (3d) 130594, ¶¶ 18-19.

4

¶ 15       An officer who lacks probable cause but whose observations lead him to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975). Such stops and inquiries must be "reasonably related in scope to the justification for their initiation." *Terry*, 392 U.S. at 29. Pursuant to such investigations, during a *Terry* detention an officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984).

¶ 16       We observe at the outset that defendant was confronted with an interrogatory question. O'Connor's questions about whether defendant's license was revoked and whether defendant had driven called for an incriminating response. At the time O'Connor asked defendant these questions, O'Connor was aware from his communications with dispatch that defendant's driver's license was revoked. An interrogation is "any practice that police should know is reasonably likely to evoke an incriminating response from a suspect." *Tayborn*, 2016 IL App (3d) 130594, ¶ 18.

¶ 17       We must next determine whether defendant was "in custody" for the purposes of *Miranda*. Detention pursuant to a *Terry* stop is not dispositive of whether a defendant is in custody for the purposes of *Miranda*, although, absent additional indicia of a custodial interrogation, a traffic stop does not ordinarily trigger *Miranda*'s warning requirements. See, *e.g.*, *Berkemer*, 468 U.S. at 438-42 (a traffic stop does not sufficiently impair the driver's exercise of the privilege against self-incrimination so as to require that the driver be warned of his *Miranda* rights); *People v. Jeffers*, 365 Ill. App. 3d 422, 429 (2006) (defendant found not to be subjected to a custodial interrogation when questioned by an officer at the scene of a traffic accident); *People v. Briseno*, 343 Ill. App.

5

3d 953, 958 (2003) (defendant found not to be in custody for purposes of *Miranda* when he was stopped on a major thoroughfare and only two officers were in his immediate presence).

¶ 18    The determination of whether a defendant is in custody for the purposes of *Miranda* includes two inquiries: "(1) what were the circumstances surrounding the interrogation? and (2) given those circumstances, would a reasonable person have felt that he was not at liberty to terminate the interrogation and leave?" *People v. Garza*, 2018 IL App (3d) 170525, ¶ 16.

> "The following factors are determinative of whether a suspect was in a custodial setting: the location, time, length, mood, and mode of interrogation; the number of police officers present; the presence or absence of the family and friends of the accused; any indication of formal arrest; and the age, intelligence and mental makeup of the accused." *Id.*

¶ 19    We agree with the circuit court's assessment in its ruling on the motion to suppress. Defendant was detained pursuant to *Terry*, but his detention never became custodial for the purposes of *Miranda*. Here, defendant was questioned in a public place by a single officer based on information the officer obtained in the course of his investigation. O'Connor's investigation began with a valid *Terry* stop, evolved to include additional suspicious information obtained during the stop, but never became "custodial" for the purposes of *Miranda*. See *Berkemer*, 468 U.S. at 421 (holding that the roadside questioning of a motorist detained pursuant to a routine stop did not constitute custodial interrogation because of the brevity of the encounter, the fact that it was conducted in public, and the fact that the atmosphere was less "police dominated" than the kinds of interrogations at issue in *Miranda*). The questioning took place on the scene and not in a coercive environment such as a police station. The questioning of defendant was brief and narrowly limited to the reasonable suspicion of criminal activity O'Connor had personally

observed. See *People v. Slater*, 228 Ill. 2d 137, 150 (2008). Defendant was not searched or told he was under arrest. Neither was defendant handcuffed, placed into a police vehicle, or transported to a police station for questioning, which are the most obvious indicia of a "formal arrest." *Id.*

¶ 20 Defendant urges that *Berkemer* is distinguishable because officers in that case observed additional indicia that defendant had committed a crime, which justified additional questioning. However, in this case, officers also obtained additional evidence that defendant had committed a crime after arriving on scene. At the time O'Connor asked defendant whether he had driven to the gas station, he was aware from both Washington's statements and from dispatch that defendant's driving privileges had been revoked. O'Connor obtained this information within a few minutes of detaining defendant. O'Connor had also personally observed defendant operating a motor vehicle and driving toward a public roadway. There were no passengers in defendant's vehicle. At that point in time, O'Connor reasonably suspected defendant had committed the offense of driving on a revoked license by traveling to the gas station and was in fact beginning to drive out of the gas station parking lot when O'Connor arrived. O'Connor was therefore permitted within the strictures of *Terry* to ask questions to confirm or dispel his suspicions. *Berkemer*, 468 U.S. at 439 (an officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions").

¶ 21 In coming to this conclusion, we note that defendant further argues that the extension of an investigation, alone, is enough to transform a valid *Terry* stop into a custodial situation for *Miranda* purposes. We need not consider this question as we do not find defendant's detention was impermissibly extended. O'Connor ran defendant's name through dispatch within minutes of speaking to him and obtained the information that his license was revoked before he spoke with Washington and the clerk. O'Connor was therefore investigating two possible offenses, just as the

7

officers in *Berkemer* were when they pulled over a motorist for a traffic violation and then inquired about the driver's apparent intoxication. See *id.* at 423.

¶ 22    Because defendant was not subjected to a custodial interrogation, O'Connor was not required to advise defendant of his rights under *Miranda*, and the circuit court properly denied defendant's motion to suppress.

¶ 23                                   III. CONCLUSION

¶ 24    The judgment of the circuit court of Du Page County is affirmed.

¶ 25    Affirmed.